## SKINNER MFG. CO. v. KELLOGG SALES CO.

### SAME v. GENERAL FOODS SALES CO., Inc.

### Nos. 12814, 12815.

Circuit Court of Appeals, Eighth Circuit.

Aug. 4, 1944.

William Ritchie, of Omaha, Neb. (C. Earl Hovey, of Kansas City, Mo., W. Ross King and Edward F. Fogarty, both of Omaha, Neb., Russell W. Bartels, of Wayne, Neb., and Ritchie & Swenson, of Omaha, Neb., on the briefs), for appellant.

George L. De Lacy, of Omaha, Neb. (Matthias Concannon and Lee J. Gary, both of Chicago, Ill., and Edwin L. Harding, of Battle Creek, Mich., on the brief), for Kellogg Sales Co., appellee.

· Edgar M. Morsman, 3d, of Omaha, Neb. (Morsman & Maxwell, of Omaha, Neb., and Lester E. Waterbury, of New York

City, on the brief), for General Foods Sales Co., Inc., appellee.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

The appellant since 1925 has sold a breakfast food under the name "Raisin-BRAN." In 1942 each of the appellees commenced to market a similar breakfast food under a name which included the words "Raisin Bran." In each of these actions the appellant, claiming the exclusive right to use the name "Raisin-BRAN," charged trade-mark infringement and unfair competition. The appellees each denied the charges made. The cases were tried separately. The District Court, at the conclusion of the trials, determined that the appellant was not entitled to the injunctive relief which it sought, and entered a decree in each case dismissing the complaint. The court made findings of fact and conclusions of law in each case, but dealt with both cases in one opinion. 52 F.Supp. 432. These appeals were briefed and argued separately. The controlling questions in each case are, however, substantially the same and the cases appropriately can be considered together.

In its opinion the trial court has, with admirable thoroughness and care, stated the facts in detail, discussed each issue presented at the trials, considered the applicable rules of law, and explained its reasons for deciding that the appellant was not entitled to a decree enjoining either appellee from marketing its competing product as "Raisin-Bran." In view of the complete analysis of the facts and the law of these cases by the trial court in its published opinion, it is unnecessary for this Court to do more than state briefly and generally the factual situation out of which the cases arose, and to express its conclusions relative to the questions presented on appeal and the basis for those conclusions.[1]

The appellant makes and sells food for human consumption. In 1925 it originated and caused to be manufactured a prepared dry breakfast food in which raisins were mixed with whole wheat flakes containing added bran and salt. The appellant named this product "Raisin-BRAN" and sold it in packages bearing that name. There was no similar product on the market at that time or until 1942. The appellant has done all that could be done to appropriate "Raisin-BRAN" as the trade-mark of its product. In 1926 it registered the name as a trade-mark under the Trade-Mark Act of March 19, 1920, c. 104, 41 Stat. 533, 15 U.S. C.A. §§ 85, 121–128. In its advertising and on the packages in which the product was sold, appellant claimed the name as its trade-mark for the product. For seventeen years it marketed the product as "Raisin-BRAN" without competition. It spent large sums of money in advertising and in creating a demand for the product and built up a large and profitable business in it.

The appellees are engaged in selling food products, including prepared packaged breakfast foods. The appellee General Foods Sales Company is the selling agency for its parent company, the General Foods Corporation. The appellee Kellogg Sales Company is owned by the Kellogg Company and is the selling organization for the products of that corporation. Each of the appellees for many years had marketed prepared breakfast foods consisting of wheat flakes with bran added and known as "bran flakes" or "bran." In 1942 the General Foods Sales Company placed upon the market a breakfast food containing bran flakes and raisins. It was manufactured by the General Foods Corporation, and was labelled and advertised as "Post's Raisin Bran." In the same year the Kellogg Sales Company placed upon the market a similar breakfast food, made by the Kellogg Company, called "Kellogg's Raisin 40% Bran Flakes." After the appellees' products containing bran and raisins came into the market, they and the appellant's product were generally referred to in the trade as "raisin bran." Prior to the advent of appellees' products, an order for "raisin bran" was regarded by the trade as an order for appellant's product "Raisin-BRAN," which was then the only breakfast food on the market consisting of bran flakes with raisins. After the advent of the appellees' competing products, an order for "raisin bran," without designating the name of the producer, was no longer treated as calling

---

[1] The main questions presented involve the common law and come within the scope of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. It is not contended that the applicable local law differs substantially from the general law, and the parties rely upon federal precedents, as in Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 113, 59 S.Ct. 109, 83 L.Ed. 73.

exclusively for appellant's "Raisin-BRAN." If a prospective purchaser failed to state whether he wanted "Post's", "Kellogg's", or "Skinner's" raisin bran; the dealer usually made the election for him.

The main contention of the appellant is concisely stated in the written demands which it made upon the appellees to cease and desist from using the words "Raisin Bran" in describing their products. In appellant's letter of June 29, 1942, to the Kellogg Company and the Kellogg Sales Company, it said:

"It has recently come to our attention that you are manufacturing and distributing in parts of the United States a product which you have labelled 'Kellogg's Raisin 40% Bran Flakes.'

"As you know, 'Raisin-BRAN' was coined by us as the name of a product which we originated and were the first to place on the market, and we have enjoyed the exclusive use of the trade mark 'Raisin-BRAN' and the sale of that particular product to which we have applied it, for nearly twenty years.

"By placing a breakfast food similar to ours on the market and using 'Raisin Bran' on the principal label as though it were descriptive of the product, we have been advised by our attorneys you are infringing our rights to the exclusive use of the trade mark 'Raisin-BRAN' for the designation of a food product.

"We, therefore, demand that you immediately cease and desist from using 'Raisin Bran' as part of your description of the product and from using said trade mark in the selling and distribution of said product.

"In order to avoid the expense of litigation, you will please advise us promptly that you will comply with this demand."

■■■ The name "Raisin-BRAN" is descriptive of ingredients of appellant's breakfast food. Without the raisins the product would appropriately have been called "bran flakes" or "bran." With the raisins it was "raisin bran" in the same sense that pie containing raisins is "raisin pie," that bread containing raisins is "raisin bread", and that muffins containing raisins are "raisin muffins." At the time the appellant originated its product anyone was free to mix raisins with bran flakes and to call the combination "raisin bran." The name "Raisin-BRAN" could not be appropriated

as a trade-mark, because: "A name which is merely descriptive of the ingredients, qualities or characteristics of an article of trade cannot be appropriated as a trade-mark and the exclusive use of it afforded legal protection. The use of a similar name by another to truthfully describe his own product does not constitute a legal or moral wrong, even if its effect be to cause the public to mistake the origin or ownership of the product. Canal Co. v. Clark, 13 Wall. 311, 323, 327, 20 L.Ed. 581; Standard Paint Co. v. Trinidad Asphalt [Mfg.] Co., 220 U.S. 446, 453, 31 S.Ct. 456, 55 L.Ed. 536; Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U.S. 118, 140, 25 S.Ct. 609, 49 L.Ed. 972." William R. Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 528, 44 S.Ct. 615, 616, 68 L.Ed. 1161. See also Elgin National Watch Co. v. Illinois Watch-Case Co., 179 U.S. 665, 673, 21 S.Ct. 270, 45 L. Ed. 365; Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 116, 117, 59 S.Ct. 109, 83 L.Ed. 73; Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 334, 335, 59 S.Ct. 191, 83 L.Ed. 195. That the name "Raisin-BRAN" was registerable and registered as a trade-mark under the Act of 1920, did not affect the question of its validity as a trade-mark. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., supra, 305 U.S. at pages 322, 324, 333, 59 S.Ct. at pages 194, 195, 200, 83 L.Ed. 195. Concededly, the appellees had the right to market their products in competition with the appellant. Having that right, they also had the right to call their products "Raisin Bran," that being an appropriate, if not the most appropriate, description of them. Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 116, 117, 59 S.Ct. 109, 83 L.Ed. 73.

■■■ The appellant contends that the evidence conclusively shows that the name "Raisin-BRAN" had been so long used and so exclusively appropriated by it as the name of its product that the name had come to mean to the trade the particular product of appellant, and that the name had therefore acquired a secondary meaning, the effect of which was to give to the appellant the exclusive right to use it and its equivalents. Most of the voluminous evidence in the records in these cases is directed to this issue of "secondary significance" of the name "Raisin-BRAN." The evidence of the appellant tended to show that the name had acquired a secondary meaning, while the evidence of the appellees tended to

show that the name, which was originally descriptive of the ingredients of the product, had retained its primary generic meaning. The trial court resolved this issue in favor of the appellees. Under the evidence, the issue was one of fact to be tried and determined by the trial court, and its determination is binding upon this Court. Cleo Syrup Corporation v. Coca-Cola Co., 8 Cir., 139 F.2d 416, 417, 418 and cases cited.

A contention that a descriptive trade name had acquired a secondary meaning, under a comparable state of facts, was rejected by this Court and by the Supreme Court in Trinidad Asphalt Mfg. Co. v. Standard Paint Co., 8 Cir., 163 F. 977, affirmed in Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 220 U.S. 446, see pages 449 and 461, 31 S.Ct. 456, see page 460, 55 L.Ed. 536. In that case the trial court had sustained the charge of unfair competition, but was reversed. See also Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 118, 59 S.Ct. 109, 83 L.Ed. 73.

It seems to us, as it did to the trial court, that the name "Raisin-BRAN" was not shown to have acquired such a secondary significance as would justify denying to the appellees the right to use the words "Raisin Bran" in describing their products. To preclude the appellees from using those words would be to give to the name "Raisin-BRAN" "the full effect of a trade-mark, while denying its validity as such." Standard Paint Co. v. Trinidad Asphalt Mfg. Co., supra, 220 U.S. at page 461, 31 S. Ct. at page 460, 55 L.Ed. 536.

■ There are cases, as appellant points out, in which a trade name which was originally merely descriptive of a product became so strongly identified in the public understanding with the source of the product that to permit a competitor to use the name or its equivalent was virtually to license him to palm off his goods as those of another and thus to engage in unfair competition. See Coca-Cola Co. v. Koke Co. of America, 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189, and Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 335, 336, 59 S.Ct. 191, 83 L.Ed. 195. "* * * the imitator of another's goods must sell them as his own production. He cannot lawfully palm them off on the public as the goods of his competitor. The manufacturer or vendor is entitled to the reputation which his goods have acquired and the public to the means of distinguish-ing between them and other goods; and protection is accorded against unfair dealing whether there be a technical trade-mark or not. The wrong is in the sale of the goods of one manufacturer or vendor as those of another. Elgin National Watch Co. v. Illinois Watch-Case Co., 179 U.S. 665, 674, 21 S.Ct. 270, 45 L.Ed. 365." William R. Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 531, 44 S.Ct. 615, 618, 68 L. Ed. 1161. In the instant cases one reasonably can believe that to permit the appellees to use the words "Raisin Bran" as descriptive of their respective products will not result in their products being sold as the product of appellant, provided the appellees furnish to the public adequate means of identifying the source of their raisin brans. Whatever the trade name "Raisin-BRAN" may have meant prior to the advent of appellees' competing products, it is a reasonable conclusion that the words "raisin bran" have at all times meant bran with raisins in it.

■ Under the evidence, the questions whether the appellees had furnished adequate means to identify their products and to distinguish them from the appellant's product, and whether the similarities which exist between the packages used by appellees and the package used by appellant have caused or are likely to cause deception and confusion in the trade, were, we think, questions of fact for the trial court to determine. Cleo Syrup Corporation v. Coca-Cola Co., 8 Cir., supra, 139 F.2d at pages 417, 418. The records show that the name "Kellogg's" appears prominently before the name of the product upon the packages containing the raisin bran sold by the Kellogg Sales Company, and that the name "Post's" appears with equal prominence upon the packages of raisin bran sold by the General Foods Sales Company. The evidence indicates that the names "Kellogg's" and "Post's" are commonly known to the trade to represent products made by the Kellogg Company and the General Foods Corporation, respectively. It would seem that any purchaser of raisin bran who was at all interested in its origin should have no difficulty in identifying the raisin bran marketed by either of the appellees and in distinguishing it from the product of the appellant.

■ The appellant contends that the trial court erred in denying it leave to reopen the case against the appellee Gen-

eral Foods Sales Company to enable the appellant to allege and prove that the Sales Company, after the case was submitted, had advertised its product as the "Genuine Post's Raisin Bran," with emphasis on the word "Genuine." The application for leave to reopen the case was addressed to the discretion of the trial court. No abuse of its discretion is apparent to us.

The decrees appealed from are affirmed.