Ruth L. VENN, d/b/a Swanson Cookie
Co., and John B. Norman, d/b/a
Norman Cookie Co., Plaintiffs,

v.

Andrew M. GOEDERT, Willmar Cookie
Co., Inc., and Willmar Sales, Inc.,
Defendants.

No. 4–60–Civ.–269.

United States District Court
D. Minnesota,
Fourth Division.

Aug. 7, 1962.

Melvin Orenstein and Richard J. Fitzgerald, Minneapolis, Minn., for plaintiffs.

Frank J. Warner, Minneapolis, Minn., and H. Leigh Ronning, Willmar, Minn., for defendants.

DEVITT, Chief Judge.

Plaintiff Venn brings this action for damages and injunctive relief, alleging breach of contract, appropriation of trade secrets, unfair competition in the palming off of defendant's cookies as those of plaintiff and common law trademark violation.

Swanson Cookie Company, Battle Creek, Michigan, and Ruth Venn, its sole proprietor, are in the business of enfranchising bakeries in a number of states and in Canada with rights to bake and sell "Archway Home Style" cookies. The franchised bakeries are afforded the use of plaintiff's recipes, formulas and techniques. In 1953, defendant Goedert and his partner, Arthur Fox, were enfranchised to make, sell, and distribute cookies under the Archway label in the States of Minnesota, North Dakota and South Dakota. Fox later sold his interests to Goedert, and Goedert subsequently assigned his franchise rights to the Willmar Cookie Company, Inc., of which he is the principal stockholder. In May of 1960, plaintiff terminated the franchise agreement with Willmar Cookie Co., Inc. Defendants then began selling cookies under the label "Gurley's" Home Style cookies.

Under the terms of the franchise agreement, the Willmar Cookie Company agreed that its right to the use of the Archway label, the formulas, recipes, and techniques would cease upon termination of the agreement.

Plaintiff Venn alleges that defendants continued to use her recipes, formulas and techniques after the termination date. Plaintiff also contends that the defendants engaged in unfair competition by "palming off" in that they similarly packaged the same kind of cookies and failed to notify their various distributors of the change from "Archway" to "Gurley" cookies, and that the distributors failed to notify the grocers of the change, and that the defendants, by implication, caused the distributors to advise the grocers that the Gurley cookies were the same as the Archway cookies.

John B. Norman, d/b/a Norman Cookie Company, is also a plaintiff, and he seeks damages and injunctive relief. He was granted a franchise by Swanson for the territory of Minnesota, North Dakota and South Dakota, following the termination of the contract between Swanson and Goedert. It is Norman's claim that he was unable to carry on his business profitably because of the alleged conduct of Goedert in producing and selling cookies made with Swanson recipes and because of the palming off of Gurley cookies for Archway cookies.

The defendants Goedert, Willmar Cookie Company and Willmar Sales, Inc., deny the claims and allege by way of defense that plaintiff terminated the franchise agreement; that defendants' "Gurley" cookie is similar to the "Archway" cookie, but made from a different recipe; that all recipes were changed immediately following the franchise termination; that all distributors were advised of the change in cookies and instructed to so advise their retail outlets. The defendants argue that there is no such thing as a secret cookie recipe, and thus there could be no appropriation of a trade secret. Defendants further contend that the Gurley label was different in color from the Archway label, had different wording and arrangement of words, and resulted in a distinctly different appearance from the markings on the packages of Archway cookies.

The requisite diversity of citizenship and jurisdictional amount exist.

The case was tried by the Court without a jury.

Considering first the claims of breach of contract and appropriation of

trade secret, the Court was much impressed with the testimony of Adrian VanderVoort, for 28 years head of the Dunwoody Baking School. He said there is no such thing as a secret formula in the baking business today, and that most formulas can be duplicated. He examined the cookie recipes represented by plaintiffs' Exhibit 16 and defendants' Exhibit CCC in the fruit and honey, oatmeal, ice box and sour cream categories, and said that these sets of cookies, one of Archway and one of Gurley, were made from different recipes and were not made from the same recipe. This testimony conflicted with the statement of plaintiffs' witness, Albert P. VanderKloot, an analytical chemist, who said the cookies were made from the same recipes. VanderVoort also examined plaintiffs' Exhibit 93, a compilation made by plaintiffs' chemist, and said that all 7 sets of examples were made from different recipes.

The defendants offered their recipe book in evidence. The manager of defendants' bakery, Edward H. Leschke, said that effective May 23, 1960, the termination date of the franchise, Gurley cookies were made from all new recipes obtained from the Wesson Oil Company, from General Mills and from other sources. He said: "I changed every recipe" after May 23, 1960. John S. Hansen, salesman for General Mills, said that he furnished the defendants with many recipes, both from General Mills and from other sources.

There was other evidence on both sides of the issue, but suffice it to say that from all of the evidence it was not made to appear that plaintiff had a secret recipe for cookies, or that cookie recipes are of a unique quality. Nor was it shown by a preponderance of the evidence that defendants made their Gurley cookies from the Archway recipe. The plaintiffs have not proved their claims for a breach of contract and for appropriation of a trade secret.

As to the next claim, that of "palming off" of Gurley cookies for Archway cookies, the evidence, while more nearly balanced, is not preponderant. The plaintiffs presented a tape recording of a private detective's interviews with store managers in an effort to reflect a deceit by defendants in palming off their cookies for plaintiff's. The recording was not very audible, but at all events its substance lends little support to the palming off argument.

If the plaintiffs have a claim at all for unfair competition, it is because of the similarity in appearance, size and color of the cookies, and in the wrapping used in packaging them. As to these physical characteristics there is a marked similarity between the packages of plaintiffs' and defendants' cookies. The question is, however, is the resemblance so close that it deceives or is likely to deceive a customer exercising ordinary care in the making of a purchase of these goods as will induce him to purchase defendants' goods in the belief that they are those of the plaintiff-Venn?

Our Minnesota Supreme Court in Winston & Newell Co. v. Piggly Wiggly Northwest, Inc., 221 Minn. 287, 293–294, 22 N.W.2d 11, 16 (1946), said:

> "What would otherwise be regarded as a deceptive simulation or resemblance of the dress of goods is not such where it is accompanied by such measures as will reasonably apprise intending purchasers of the source of the goods. Restatement, Torts, § 741, *comment j*. In such a case there can be no deceit, for the obvious reason that the intending purchaser either has, or is charged with, knowledge of the facts concering the goods purchased. * * The most common and effective means of apprising intending purchasers of the source of goods is a prominent disclosure on the container, package, wrapper, or label of the manufacturer's or trader's name. When that is done, there is no basis for a charge of unfair competition." (Citations omitted.)

This case stands for the proposition that there is no deceit where the

allegedly offending merchandise contains a label prominently reflecting the manufacturer's name. In this instance, the defendants prominently displayed the name "Gurley", and in a markedly different color, on their label. This should have been enough to tell the purchaser what he was buying. And this, albeit the packaging was otherwise the same and the size, color, texture and general appearance of the cookies were similar. It appeared from the evidence that many cookies of the "home style" variety were of the same size, color and texture, and were packaged in similar type containers.

It is urged that the defendants made no effort to instruct their distributors, or to advise the grocers of the change of product being distributed at the time of the termination of the Archway franchise on May 23, 1960. But there was considerable evidence to the contrary. For example, it was shown that defendants caused a notice, plaintiffs' Exhibit 33, to be distributed to all of the distributors for circulation to the grocers at the time of the changeover, advising them that the defendants were ceasing distribution of Archway cookies and commencing the distribution of Gurley cookies.

While the circumstances surrounding the defendants' changeover from Archway to Gurley cookies on May 23, 1960, were such as to indicate that it was not unlikely that defendants would take full advantage of previous good will built up through their long-time handling of Archway cookies, the preponderance of evidence does not show that the defendants practiced any deceit in the process. It should be recalled that Goedert was an independent entrepreneur and had himself financed and built up the cookie distribution business, and that he owned the assets and controlled the operation of the Willmar Cookie Company. It should be emphasized that it was the plaintiff and not the defendants who brought about the termination of the Archway cookie franchise. Certainly Goedert, responsible for the profitable operation of his own extensive manufacturing and distribution business, could reasonably be expected, under such circumstances, to exert his best efforts to manufacture and distribute his own brand of cookies.

■ It is not to be thought that considerable advantage and good will did not accrue to Goedert through his long-time Archway association, but it was an asset to which he contributed a major part through his own promotional energies. He was justified in capitalizing on that asset when he started distributing his own Gurley cookies. But this is a long way from saying that defendants practiced deceit by palming off Gurley for Archway cookies as alleged in the complaint.

It is my view that the evidence here has not shown a case of unfair competition. See and compare, Neely v. Boland Mfg. Co., 274 F.2d 195 (8th Cir. 1960); Tas-T-Nut Co. v. Variety Nut & Date Co., 245 F.2d 3 (6th Cir. 1957).

In a fourth claim, it is asserted by plaintiff that the defendants have infringed plaintiff's common law trademark and trade name "Home Style."

■ It should be remembered that the law of trademark infringement is but a part of the law of unfair competition, Seven Up Co. v. Cheer Up Sales Co., 148 F.2d 909 (8th Cir. 1945).

The test of deceptive similarity is whether ordinary purchasers buying under the usual conditions in the trade, and exercising ordinary care, would likely be induced to purchase the article to which the accused trademark is affixed, believing it to be the plaintiff's article. Seven Up Co. v. Cheer Up Sales Co., supra, at p. 911.

■ While it is very doubtful that the term "Home Style" is sufficiently unique to be the subject of trademark protection, I am satisfied upon an examination of the labels of plaintiff's and defendants' cookies, which bear the trademark of each, that the defendants' use of the phrase "Home Style" would not create confusion in the minds of a prospec-

tive purchaser, and that therefore there is no trademark infringement.

The plaintiff's Certificate of Registration of her trademark "Home Style" was not made with the Minnesota Secretary of State until January of 1962. But of course the mere physical registration of a trademark does not confer any greater rights than those which existed at common law without registration. Griesedieck Western Brewery Co. v. Peoples Brewing Co., 149 F.2d 1019 (8th Cir. 1945).

Defendants may prepare appropriate findings of fact, conclusions of law and form of order for judgment.