319 F.2d 812
 138 U.S.P.Q. 415
 Ruth L. VENN, d/b/a Swanson Cookie Co., and John B. Norman,
d/b/a Norman Cookie Co., Appellants,
v.
Andrew M. GOEDERT, Willmar Cookie Company, Inc., and Willmar
Cookie Sales, Inc., Appellees.
 No. 17206.
 United States Court of Appeals Eighth Circuit.
 July 17, 1963.
 
 Melvin I. Orenstein, Minneapolis, Minn., Richard J. FitzGerald, Vennum, Newhall, Ackman & Goetz, Minneapolis, Minn., on the brief, for appellants.
 Frank J. Warner, Minneapolis, Minn., H. Leight Ronning, Willmar, Minn., and Carl K. Lifson, Minneapolis, Minn., on the brief, for appellees.
 Before VOGEL, VAN OOSTERHOUT and RIDGE, Circuit Judges.
 VAN OOSTERHOUT, Circuit Judge.
 
 
 1
 Plaintiff Ruth L. Venn, d/b/a Swanson Cookie Co., sole owner of the cookie franchise operation here involved, brings this action for damages and injunctive relief against defendants based upon breach of contract, appropriation of trade secrets, and unfair competition. The principal defendant is Andrew M. Goedert. He controls the corporate defendants and their rights and liabilities are based upon those of Goedert. Plaintiff Norman, the new franchisee for the territory formerly assigned to defendants, seeks relief for damage to him as franchisee similar to that claimed by the plaintiff Venn.
 
 
 2
 Goedert with Fox, who subsequently sold and assigned all of his rights to Goedert, obtained a franchise in 1953 from the Swanson Cookie Co. to bake and sell soft home-style cookies under an Archway label in Minnesota and the Dakotas. By virtue of a written contract between the parties, plaintiff supplied the defendants with cookie recipes and techniques in producing, packaging and selling the cookies, which information was supplemented from time to time by confidential bulletins. The contract provided that such information was to be confidential, that a specified royalty was to be paid, that either party could terminate on 60 days notice, and that defendants' right to use the recipes and techniques 'shall cease immediately upon the termination of this Agreement, and that the Baker will not use or claim the right to use any of the said properties of the Company after the cancellation or termination of this Agreement for any reason whatsoever.'
 
 
 3
 Goedert was the first franchisee in the territory assigned to him. He developed the territory at his oen expense into a substantial business. Plaintiff, believing that defendants were violating their contract by producing and selling cookies, nuts, candies, and other items not covered by the franchise, served a 60 day notice terminating the franchise, effective May 23, 1960. The validity of the termination is not here questioned. Royalties up to termination date were paid.
 
 
 4
 Defendants continued to make and sell the type of soft cookies previously produced under the franchise, such as ice box, oatmeal, fruit and honey, peanut butter and molasses cookies. Defendants denied that the recipes and techniques supplied them are secret and also denied using the recipes and techniques after termination. Defendants likewise denied the guilt of unfair competition.
 
 
 5
 The case was tried to the court. A well-considered memorandum opinion is reported at 206 F.Supp. 361. Findings of fact and conclusions of law were made. Final judgment of dismissal was entered. This timely appeal is from such judgment and from the court's refusal to grant plaintiffs' motion to amend findings of fact, conclusions and judgment entry. Jurisdiction, based upon diversity of citizenship, is established.
 
 
 6
 Plaintiffs insist that they are entitled to a reversal for the following reasons:
 
 
 7
 1. Erroneous finding that their recipes and techniques were not secret.
 
 
 8
 2. Erroneous finding that defendants did not use trade secrets after franchise termination.
 
 
 9
 3. Erroneous finding that defendants were not guilty of unfair competition.
 
 
 10
 The issues here raised are largely fact issues. As we have frequently stated, we do not try cases de novo. In a nonjury case, this court will not set aside findings of fact of the trial court unless there is no substantial evidence to support them, unless they are against the clear weight of the evidence, or unless they are induced by an erroneous view of the law. Anthony v. Louisiana & Arkansas Ry. Co., 8 Cir., 316 F.2d 858, 861; Neely v. Boland Mfg. Co., 8 Cir., 274 F.2d 195, 201.
 
 
 11
 The parties agree that the contract and activity giving rise to this cause of action are Minnesota transactions and that the law of Minnesota controls. We accept the view of the trial court upon doubtful questions with respect to the law of its state unless convinced that its determination is based upon a clear misconception or misapplication of local law. Jennings v. McCall Corp., 8 Cir., 320 F.2d 64; National Bank of Eastern Arkansas v. General Mills, Inc., 8 Cir., 283 F.2d 574, 576-577.
 
 
 12
 We hold that the dismissal of all of plaintiffs' claims was based upon fact findings supported by substantial evidence and was not induced by any erroneous view of Minnesota law.
 
 
 13
 Extensive testimony was offered by both sides at the trial. The facts and applicable law are adequately set out in the trial court's opinion. We have fully and carefully examined the record. A detailed discussion of the voluminous and conflicting evidence will serve little purpose. Like the trial court, we are impressed with the testimony of Mr. Vander Voort, who had spent his lifetime in the baking industry and had served for 28 years as head of the baking school at the Dunwoody Institute in Minneapolis, and had written technical articles in baking periodicals.
 
 
 14
 We shall first consider errors 1 and 2 which relate to plaintiffs' claims based upon breach of contract and appropriation of trade secrets. We agree with plaintiffs' contention that under Minnesota law, the essential elements of a cause of action for appropriation of trade secrets are (1) existence of a trade secret, (2) acquisition of the secret as a result of a confidential relationship, and (3) use of the trade secret by the party to whom the secret was disclosed. See Larx Co. v. Nicol, 224 Minn. 1, 28 N.W.2d 705; Radium Remedies Co. v. Weiss, 173 Minn. 342, 217 N.W. 339; Chamber of Commerce v. Wells, 100 Minn. 205, 111 N.W. 157. Such appears to be the law generally. Sandlin v. Johnson, 8 Cir., 141 F.2d 660; Restatement, Torts, 757.
 
 
 15
 In order to prevail, the burden is upon the plaintiffs to establish each of the elements above stated. It is clear that defendants acquired the recipes and techniques as a result of a confidential relationship. It would appear from the court's opinion that it determined that the recipes and techniques were not secret. There is substantial evidence to the effect that there is no such thing as a secret cookie recipe and that any recipe could be substantially duplicated by a skilled baker. Such evidence would be entirely adequate to support a finding that the recipes were not secret with respect to an outsider. However, the rule appears to be otherwise in situations where the parties have among themselves treated the disclosure as secret and confidential. In the Larx case, the Minnesota court states:
 
 
 16
 'It is clear that, even though a secret process not protected by patent or copyright be subject to analysis or discovery by others, and, even though others not bound by contract or confidential relationship may legitimately establish or analyze the ingredients comprising the same, the owner thereof may nevertheless protect his property rights therein against one lawfully bound by contract not to disclose, publish, or use such formula or process, and in equity may enjoin him from doing so in violation thereof.' 28 N.W.2d 705, 713.
 
 
 17
 See IV Restatement, Torts, 757, p. 7.
 
 
 18
 We would be reluctant to affirm solely upon the basis of the finding that the recipes under the circumstances here existing are not trade secrets. We need not decide such question as we are satisfied the court was justified in finding that defendants made no use of the trade secrets after the contract termination. Such finding alone is sufficient to support the denial of the claims based upon contract and wrongful appropriation.
 
 
 19
 The court, after setting out and discussing the supporting evidence, states:
 
 
 20
 'Nor was it shown by a preponderance of the evidence that defendants made their Gurley cookies from the Archway recipe. The plaintiffs have not proved their claims for a breach of contract and for appropriation of a trade secret.' 206 F.Supp. 361, 363.
 
 
 21
 Plaintiffs cannot extend defendants' obligations under the contract beyond the terms of the contract. While defendants agreed not to use plaintiffs' recipes and techniques after termination, they did not agree to cease making or selling similar lines of cookies.
 
 
 22
 Plaintiffs and defendants, in compliance with the law, printed on their packaged cookies a list of all ingredients used. There is evidence that recipes for many of plaintiffs' cookies are generally available from various sources such as flour and shortening manufacturers and other bakers, and that defendants were supplied with recipes from such sources. Likewise, there is testimony that a skilled baker by experimentation can substantially match a cookie without access to the recipe. Such evidence gives support and credence to the positive testimony of Goedert and his baker that the recipes were all changed and that none of the plaintiffs' recipes were used after termination of the franchise. Additionally, Mr. Vander Voort testified that he examined plaintiffs' and defendants' recipes for various cookies, and viewed the cookies in evidence, and that the recipes used by the defendants were not the same as plaintiffs' recipes. The trial court had before it for observation and comparison many cookies baked by plaintiffs, defendants, and others. Such evidence is not available to us since the cookies have deteriorated since the trial.
 
 
 23
 Our examination of the record satisfies us that the court's finding that the plaintiffs have not proved defendants continued to use plaintiffs' recipes after the termination of the franchise is supported by substantial evidence.
 
 
 24
 The trial court, upon the basis of the law as stated in Winston & Newell Co. v. Piggly Wiggly Northwest, Inc., 221 Minn. 287, 22 N.W.2d 11, and Neely v. Boland Mfg. Co., 8 Cir., 274 F.2d 195, found that the plaintiffs had not established a case of unfair competition.
 
 
 25
 Stewart Paint Mfg. Co. v. United Hardware Distributing Co., 8 Cir., 253 F.2d 568, relied upon by the plaintiffs is readily distinguishable factually from our present case. There, after termination defendant continued to use identical paint specifications, identical artificial color designations and code numbers, and there was substantial evidence of palming off. Here the evidence discloses that cookies of the same type resemble each other as to size, color and shape, that the packaging is done by standard machines purchased on the open market, and as Mr. Vander Voort testified, cookie packaging is pretty much the same throughout the industry.[1]
 
 
 26
 The packaging similarities are generally functional. Secondary meaning will not ordinarily be attributed to functional features. J. C. Penney Co. v. H. D. Lee Mercantile Co., 8 Cir., 120 F.2d 949; Annot. 150 A.L.R. 1067, 1112; III Restatement, Torts, 741, 742.
 
 
 27
 The Minnesota court in the Piggly Wiggly case, largely relied upon by the trial court, emphasizes that unfair competition is bottomed upon deceit in palming off one's product as that of another, and points out:
 
 
 28
 'The most common and effective means of apprising intending purchasers of the source of goods is a prominent disclosure on the container, package, wrapper, or label of the manufacturer's or trader's name. When that is done, there is no basis for a charge of unfair competition.' 22 N.W.2d 11, 16.
 
 
 29
 In our present case, the word 'Gurley' is prominently displayed upon defendants' label. The yellow coloring of the Gurley label contrasts sharply with the red and white Archway label. The evidence of attempting to palm off is meager. While the Archway label had not been immediately removed from the truck of one of defendants' numerous distributors, and in a few instances the Archway plate on display racks remained for a time, such failures were in violation of defendants' instructions and could readily be found to be inadvertent.
 
 
 30
 The trial court has adequately demonstrated in its opinion that the plaintiffs have not established their claim of unfair competition. Upon the basis of the applicable Minnesota law and the facts disclosed by the evidence, the trial court reached a permissible conclusion. We affirm the unfair competition issue upon the basis of the trial court's wellconsidered opinion.
 
 
 31
 Affirmed.
 
 
 
 [1]
 Mr. Vander Voort testified as follows:
 'Q. * * * What about the packaging of cookies in this modern day and age, is it quite similar?
 'A. Yes, I would say so. Quite often we have to look at the name on the package in order to distinguish the manufacturer, for example.
 Q. I see. In other words, the label would probably be the only distinguishing feature many times?
 'A. Yes. Generally speaking.
 'Q. That is your experience and observation?
 'A. I would say so. I might glance at a package of cookies take, for example, Oreos, and another similar product, one made by National Biscuit and another by Loose-Wiles, my wife likes one kind and I have to look at the label to distinguish the difference. I am apt to grab one as the other, they look so much alike.
 'Q. I see. That's true in the cookie industry today?
 'A. I would say so, generally speaking.'