WATER GREMLIN COMPANY,
Plaintiff,

v.

IDEAL FISHING FLOAT COM-
PANY, INC., Defendant.

No. 3–73–Civ.–339.

Unitd States District Court,
D. Minnesota,
Third Division.

Oct. 23, 1975.

Marvin Jacobson, Jacobson & Johnson, St. Paul, Minn., for plaintiff.

Michael Berens, Oppenheimer, Wolff, Foster, Shepard & Donnelly, Minneapo-

lis, Minn., and James Van Santen, Hill, Gross, Chiara & Simpson, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

DEVITT, Chief Judge.

Plaintiff, Water Gremlin, brings this action alleging trademark infringement, unfair competition, and false marking, and upon agreement of the parties, the case has been submitted to the court for decision without oral testimony or oral argument. The court has jurisdiction. 15 U.S.C. § 1121, 28 U.S.C. § 1338(a), (b). A preliminary injunction was denied on January 28, 1973. Depositions have been taken and numerous exhibits and affidavits have been submitted. The parties have stipulated to most of the facts and briefs have been filed.

Plaintiff, Water Gremlin, is a Minnesota corporation headquartered in White Bear Lake, Minnesota, and defendant, Ideal, is a Virginia corporation located in Richmond, Virginia. For a number of years, both parties have manufactured and sold similar fishing line sinkers and have distributed their respective various types of sinkers nationwide in a variety of similar packages and containers.

### Trademark Infringement

■ Count I of plaintiff's complaint alleges infringement upon its trademark, "Rubbercor."

At least since 1949, Water Gremlin has manufactured and sold one particular sinker under the name "Rubbercor." This sinker has a rubber center which runs through its core lengthwise in a manner so that the rubber can be stretched to allow a fishing line to be inserted through a slot in the sinker, whereupon the rubber core is permitted to clamp the sinker on the line. The patents under which this sinker had been exclusively manufactured by Water Gremlin have expired, and Ideal now manufactures and markets a similar rubber center sinker. Plaintiff claims that defendant's use of the words "rubber center" [1] to identify that particular fishing line sinker constitutes infringement upon plaintiff's trademark, "Rubbercor."

The primary test for trademark infringement is whether use of the disputed word or phrase is likely to cause confusion or to deceive as to the origin of the goods. *Flavor Corp. of Am. v. Kemin Indus., Inc.*, 493 F.2d 275 (8th Cir. 1974). The essence of the wrong of trademark infringement is deception or passing off one's goods for those of another. *Beer Nuts Inc. v. King Nut Co.*, 477 F.2d 326 (6th Cir.), *cert. denied*, 414 U.S. 858, 94 S.Ct. 66, 38 L.Ed.2d 108 (1973). In the case at hand, we note that defendant's labels and packaging always display its trademark consisting of the word "Ideal" and a fanciful fish design. When used by defendant, the words "rubber center" or "rubber center sinkers" always appear in close proximity to the prominently displayed "Ideal" trademark. All of defendant's labels and containers show its corporate tradename, Ideal Fishing Float Co., Inc., and its corporate location in Richmond, Virginia. There is no evidence of confusion as to the origin of the products manufactured by the parties and both parties have indicated that they know of no such confusion. While these considerations do not preclude purchaser confusion, they tend to negative the probability of there being a "likelihood of confusion" sufficient to meet the test for trademark infringement.

Especially significant is the fact that the terms rubber core, "Rubbercor," or rubber center, as used here, are highly descriptive. It is well settled that such words receive less protection under the trademark laws than other words. *Safeway Stores, Inc. v. Safeways Properties,*

---

[1]. Defendant makes no trademark claim to the words "rubber center" or "rubber center sinker."

*Inc..* 307 F.2d 495, 498 (2d Cir. 1962); *Skinner Mfg. Co. v. Kellogg Sales Co.,* 143 F.2d 895, 898 (8th Cir.), *cert. denied,* 323 U.S. 766, 65 S.Ct. 119, 89 L.Ed. 613 (1944). Also, we find no secondary meaning attaching to plaintiff's trademark name. The evidence indicates that sportsmen commonly use the terms "rubber core sinker" and "rubber center sinker" in the simple descriptive sense when referring to these fishing line attachments. Moreover, it is difficult to imagine how else these items might readily be described. Whatever confusion might result concerning the name in question was within the risk plaintiff took by choosing and developing the weak or descriptive trademark, "Rubbercor." *See Westward Coach Mfg. Co. v. Ford Motor Co.,* 388 F.2d 627 (7th Cir.), *cert. denied,* 392 U.S. 927, 88 S.Ct. 2286, 20 L.Ed.2d 1386 (1968). Plaintiff's claim of trademark infringement is without merit.

### Unfair Competition

■ The second count of plaintiff's complaint alleges unfair competition. Here, in addition to the assertions concerning defendant's use of the words "rubber center sinker" as discussed above, plaintiff complains about the striking similarity between the merchandising methods used by these two manufacturers.[2] Specific reference is made to both parties' use of similar catalog numbers designating their rubber-center

type sinkers, and to the similar package coloring systems used by each party for their various types of sinkers.

■ The essence of the law of unfair competition is fair play. Generally, a claim for unfair competition is established with a showing that one party is "palming off" of his product as that of another so that the public is deceived as to the source of the defendant's goods. *See generally Bentley v. Sunset House Distrib. Corp.,* 359 F.2d 140 (8th Cir. 1966); *Bliss v. Gotham Indus., Inc.,* 316 F.2d 848 (9th Cir. 1963). The law of unfair competition does not prevent the copying of unpatentable articles unless the public is misled as to the source of those articles. *Bentley, supra.* Each case must be decided on its own facts and according to its own merits. *Seven Up Co. v. Cheer Up Sales Co.,* 148 F.2d 909, 912 (8th Cir. 1945), *cert. denied,* 326 U.S. 727, 66 S.Ct. 32, 90 L.Ed. 431 (1945).

■ Plaintiff argues that defendant's use of the words "rubber center" constitutes unfair competition. Although unfair competition is somewhat broader than trademark infringement, the two areas are governed by essentially the same principles, and the facts supporting either are substantially the same. *See Heaton Distrib. Co. v. Union Tank Car Co.,* 387 F.2d 477, 483 (8th Cir. 1967). As outlined above and in the reasoning that follows, the facts and circumstances of this case preclude a

2. The evidence shows that there are numerous similarities between the parties' products, prices, merchandising methods, and the containers in which the products are displayed and sold. In some cases the packaging and merchandising innovations which are presently used by both parties were originated or first used by defendant; in other instances, plaintiff was the originator. For example, perhaps the most striking similarity is the circular wheel-like compartmentalized containers which are used by both parties. Apparently, the defendant was first to use such containers.

Plaintiff's complaint attacks the similarity of the parties' containers, and specific reference is made to the similarity between

the small plastic sinker pouches used by both manufacturers. Apparently plaintiff has abandoned this argument inasmuch as it now admits that "the style and shape of the containers or packages for the respective products as well as the merchandising procedures have been used in parallel fashion by the parties for many years, [and therefore] these cannot be exclusively claimed by one or the other." Brief for plaintiff at 22. Moreover, the evidence shows that defendant has been using essentially the same plastic pouch design since at least 1964. We conclude that the similarities between these parties' packaging containers will not support any claim of unfair competition.

finding that defendant has attempted to pass off his product as that of plaintiff. Defendant calls its sinker by its apt descriptive name and takes reasonable steps to inform prospective purchasers of the source of its products. Defendant's use of the descriptive name "rubber center" will not support a claim of unfair competition.

Plaintiff also objects to use of the letters "RC" and "PRC" in defendant's catalog numbers designating rubber center sinkers. Plaintiff was first to use these alphabetical designations for its "Rubbercor" sinkers and its "Rubbercor" sinkers packaged in plastic pouches. However, these letters are used by defendant only in its catalogs. Since the catalogs are distributed to dealers (not the general public), and the catalogs of plaintiff and defendant are clearly distinguishable, it is extremely unlikely that the use of the same letters in catalog numbers for one particular item will result in confusion as to the source of the products.

Finally, plaintiff complains that the package coloring system now used by defendant is strikingly similar to the system first used by plaintiff. The colors used on plaintiff's packages vary according to the type of sinker contained in each package, and it appears that the colors used on defendant's packages are identical in four out of five instances to the colors chosen first by plaintiff.

█ Ordinarily color, by itself, is not patentable or subject to trademark protection. *See A. Leschen & Sons Rope Co. v. Broderick & Bascom Rope Co.,* 201 U.S. 166, 26 S.Ct. 425, 50 L.Ed. 710 (1906); *Midwest Plastics Corp. v. Protective Closures Co.,* 285 F.2d 747 (8th Cir. 1960). However, use of particular color or color combination may be protected in those instances where the coloring has acquired a secondary meaning so that the color indicates the source of the product. *See Volkswagenwerk Aktiengesellschaft v. Rickard,* 492 F.2d 474 (5th Cir. 1974). Such a secondary

meaning is typically established through long-term exclusive use and promotion. *Ralston Purina Co. v. Thomas J. Lipton, Inc.,* 341 F.Supp. 129, 133 (S.D.N.Y. 1972).

Both parties to this lawsuit have used varying colors on their sinker packages for a number of years. Not until the 1969–70 season did plaintiff introduce its color coding system which distinguished the types of sinkers contained in its packaging. Defendant introduced its similar color system in 1971. Therefore, plaintiff used its coloring scheme *exclusively* for only one season. From the facts presented, we conclude that plaintiff has not shown that its color coding system had acquired a secondary meaning.

Absent a finding of secondary meaning, plaintiff can establish unfair competition if it can demonstrate that defendant is "palming off" its product as the plaintiff's. *Bercy Indus. Inc. v. Mechanical Mirror Works, Inc.,* 274 F.Supp. 157 (D.C.N.Y.1967). As discussed above, defendant's packages all display, in a reasonably prominent manner, its corporate trademark—a fanciful fish design containing the name "Ideal." Also, defendant's packages show its full corporate name and location. Although the coloring schemes used by these two parties are strikingly similar, we find that defendant has taken reasonable precautions to distinguish his product from that of plaintiff so that a finding of palming off is not justified. *See Schmidt Mfg. Co. v. Sherrill Indus. Inc.,* 249 F.Supp. 480, 487–88 (W.D.N.C. 1965); *Venn v. Goedert,* 206 F.Supp. 361 (D.Minn.1962), *aff'd,* 319 F.2d 812 (8th Cir. 1963).

Claims of unfair competition in business cannot be determined in a vacuum; rather, the question of whether there is essential unfairness must be determined with particular reference to the character and circumstances of the business. *See International News Serv. v. Associated Press,* 248 U.S. 215, 39 S.Ct. 68,

63 L.Ed. 211 (1918). We have considered the acts complained of in their entirety, and in the context of these facts and the commercial history of the traditionally similar products involved, we find no unfair competition. In the final analysis, we conclude that the defendant is selling its goods as its own production. *See generally Skinner Mfg. Co. v. Kellogg Sales Co.*, 143 F.2d 895 (8th Cir. 1944); *Maas & Waldstein Co. v. American Paint Corp.*, 178 F.Supp. 498 (D. Minn.1959) and cases cited therein, *aff'd*, 288 F.2d 306 (8th Cir. 1961).

### False Marking

Last to be considered is the allegation in plaintiff's amended complaint (count three) that defendant is in violation of the false marking statute, 35 U.S.C. § 292, which proscribes the marking of a product as patented or in the process of being patented when such is not the case.[3] Plaintiff complains about the words "Pat. and Pats. Pend." printed on plastic pouches containing defendant's rubber center sinkers. These words appear on the bottom line printed on the front of the reclosable plastic pouches in which defendant sells a variety of its products. Apparently, none of the sinkers sold in these pouches are patented nor have applications for patents been made.

■ ■ The false marking statute is penal in nature and must be strictly construed against one seeking its application. *Felt v. Ronson Art Metal Works*, 107 F.Supp. 84 (D.Minn.1952). A finding of intent to deceive the public is an absolute prerequisite to a finding of liability under the statute. *G. L. Leblanc Corp. v. H. & A. Selmer, Inc.*, 310 F.2d 449 (7th Cir. 1962), *cert. denied*, 373 U.S. 910, 83 S.Ct. 1299, 10 L.Ed.2d 412 (1963).

■ Defendant has been selling products in plastic pouches marked in this manner since 1964. The rubber center sinker, introduced by defendant in 1973, is one of several products which defendant markets in these plastic pouches. None of the other types of containers utilized by defendant bear the alleged offending patent notice.

Most significantly, it appears that the words "Pat. and Pats. Pend." were printed on the pouches at the behest of the pouch manufacturer. The evidence indicates that Ideal had nothing to do with affixing the designation "Pat. and Pats. Pend." and, in fact, defendant objected to the placement of these words on its plastic pouches.

While there may be a possibility that some members of the public might take the patent reference in the present case as referring to the package contents instead of the pouches themselves, our review of the evidence clearly demonstrates that the required guilty purpose or "intent to deceive the public" is not present. Therefore, there is no liability under the false marking statute.

For the foregoing reasons as to each count of the complaint herein, judgment shall be entered in favor of defendant. This memorandum shall constitute the court's findings of fact and conclusions of law.

---

3. 35 U.S.C. § 292(a) provides in part as follows:

Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented for the purpose of deceiving the public; or

Whoever marks upon, or affixes to, or uses in advertising in connection with any article, the words "patent applied for," "patent pending," or any word importing that an application for patent has been made, when no application for patent has been made, or if made, is not pending, for the purpose of deceiving the public—

Shall be fined not more than $500 for every such offense.