**In re WATER GREMLIN COMPANY.**

**Appeal No. 80–534.**

United States Court of Customs and Patent Appeals.

Nov. 26, 1980.

Carl L. Johnson, St. Paul, Minn., for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents and Trademarks; Jeffrey H. Kaufman and Fred E. McKelvey, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER, and NIES, Judges.

NIES, Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board (board) of the United States Patent and Trademark Office (PTO), 204 USPQ 261 (1979), affirming the examiner's refusal to register a package design with the words SINKER SELECTOR displayed thereon on the Supplemental Register. We affirm.

## BACKGROUND

Appellant applied for registration, initially on the Principal Register, of the following design and words:

The application for registration (Serial No. 5,535, filed November 5, 1973) states "the mark is used as a container for the goods" and claims use since August 1, 1966, for "weights for attachment to fishing lines."

During examination of the application the examiner refused registration of the mark on the Principal Register finding the term SINKER SELECTOR to be merely descriptive of the goods. Further, the examiner required amendment of the description of goods to indicate that appellant's weights are sold with a container. Finally, the examiner found the container to be entirely functional in design and required the representation of the container either to be deleted from the drawing or shown in dotted lines.

Water Gremlin amended its application to seek registration on the Supplemental Register, which obviated the examiner's objection to the registrability of the words SINKER SELECTOR, but refused to comply with the examiner's continued require-

ments to amend the drawing and the description of the goods. Having reached an impasse with the examiner, Water Gremlin appealed to the board.

On appeal, the board held that:

[T]he configuration of applicant's container is essentially both functional and utilitarian and hence, alone or in association with the apt descriptive name "SINKER SELECTOR", it is devoid of the capability of functioning as a trademark, a characteristic necessary for registration on the Supplemental Register. [204 USPQ at 264.]

## OPINION

### The Container Design

The drawing submitted by appellant[1] shows the top view of a circular box with a transparent cover, through which the interior can be seen to be divided into six wedge-shaped compartments. An aperture is provided in the cover for removal of the contents when the cover is rotated. The aperture is wedge-shaped like the compartments. A "handle" extends radially from the container in the form of a loop.

Appellant argues that its container is a miniature frying pan, pointing to its circular shape, the transparent "lid" and the "handle." No more than a slight resemblance is apparent from the drawing, and our examination of the specimens of record leads us to the same conclusion. As the board noted, the "handle" is an ordinary feature of packages designed to be hung on display racks. In this instance it might also be useful for hanging on a fisherman's belt. The large opening in the cover belies appellant's assertion that the top resembles a frying pan lid. We, therefore, evaluate the container design without further reference to appellant's characterization as a "frying pan."

■■■ Appellant's asserted intention to adopt the package design to indicate source may well be true, but intent or lack of

---

1. See In re Minnesota Mining & Manufacturing Co., 51 CCPA 1547, 335 F.2d 836, 142 USPQ 366 (1964), for the requirements of an adequate drawing where a three dimensional object is claimed as a mark.

intent at the time of adoption of a particular design is not controlling. Nor is proof that a particular container actually functions as a means of indication of source to some purchasers. Not all designs or words which in fact indicate or come to indicate source will be restricted in use to a single merchant. *In re Pollak Steel Co.*, 50 CCPA 1045, 314 F.2d 566, 136 USPQ 651 (1963). We recognize "that there is an overriding public policy of preventing monopolization, of preserving the public right to copy." *In re Deister Concentrator Co.*, 48 CCPA 952, 966, 289 F.2d 496, 504, 129 USPQ 314, 322 (1961). It is from this premise that we start and against which the protection of trademarks, the carving of an exception to the rule, must be balanced. Trademarks are useful tools of a competitive society, providing consumers with the means for choosing from among different producers.[2] The tenet which precludes recognition of functional designs as trademarks is one of the balance points. Our society is better served if functional containers (as well as functional product designs[3] and highly descriptive or generic terms[4]) remain available for use among competitors. To the extent this causes a modicum of confusion of the public, it will be tolerated. There is, indeed, no overriding requirement in the law that comparable goods be distinguishable in the marketplace. On the other hand, a merchant who *wishes* to set himself apart has no dearth of means to do so. One who chooses a commonplace design for his package, or one different from competitors only in essentially functional features, even if he is the first to do so, must expect to have to identify himself as the source of goods by his labelling or some other device.[5]

As to the specific design here, the circular shape of a container is commonplace. Its selection rather than a square or oblong design can mean nothing to prospective purchasers. As a matter of function, the circular shape of the container permits the matching lid to rotate. The compartmenting of the interior is functional, and once a circular box is selected, dividing it "pie fashion" into wedge-shaped compartments is routine. The wedge-shape of the opening in the lid is dictated by the shape of the compartments. The "handle," as previously discussed, is also functional.

■ We, therefore, agree that appellant's container is an unregistrable feature of the claimed mark. The examiner's requirement to delete the design (or show it in dotted lines) was entirely in order. Appellant's argument that this ground for rejection is inadequate inasmuch as the design is claimed with the words SINKER SELECTOR is not tenable. An application which includes a claim to rights in unregistrable subject matter must be rejected. *In re Richardson Ink Co.*, 511 F.2d 559, 185 USPQ 46 (Cust. & Pat.App.1975).

■ This case is distinguishable from *In re Franklin Press, Inc.*, 597 F.2d 270, 201 USPQ 662 (Cust. & Pat.App.1979), where this court ruled that an applicant for a particular composite mark need not delete certain matter from the mark as claimed. The applicant had *disclaimed* rights in the words which the examiner required to be deleted. Appellant here made no offer to

---

2. "Trade-marks, indeed, are the essence of competition, because they make possible a choice between competing articles by enabling the buyer to distinguish one from the other." H.R.Rep.No.219, 79th Cong., 1st Sess. 3 (1945).

3. *In re Honeywell*, 532 F.2d 180, 189 USPQ 343 (Cust. & Pat.App.1976); *Best Lock Corp. v. Schlage Lock Co.*, 56 CCPA 1472, 413 F.2d 1195, 162 USPQ 552 (1969); *Mine Safety Appliance Co. v. Electric Storage Battery Co.*, 56 CCPA 863, 405 F.2d 901, 160 USPQ 413 (1969); *In re Shakespeare Co.*, 48 CCPA 969, 289 F.2d 506, 129 USPQ 323 (1961).

4. *In re Helena Rubinstein*, 56 CCPA 1110, 410 F.2d 438, 161 USPQ 606 (1969); and *Clairol, Inc. v. Roux Distributing Co.*, 47 CCPA 1165, 280 F.2d 863, 126 USPQ 397 (1960).

5. *Schlitz Brewing Co. v. Houston Ice Co.*, 250 U.S. 28, 39 S.Ct. 401, 63 L.Ed. 822 (1919); *Price Food Co. v. Good Foods, Inc.*, 400 F.2d 662 (CA 6 1968); *Venn v. Goedert*, 319 F.2d 812 (CA 8 1963); *Hygienic Specialties Co. v. H. G. Salzman, Inc.*, 302 F.2d 614 (CA 2 1962); *Life Savers Corp. v. Curtiss Candy Co.*, 182 F.2d 4, 85 USPQ 440 (CA 7 1950); *International Latex Corp. v. Flexees, Inc.*, 96 USPQ 450 (N.Y.App. Div.1953).

disclaim unregistrable subject matter.[6] Because we find applicant is not entitled to the registration it seeks, the refusal of the registration must be affirmed.

*Other Grounds*

 We find no error in the requirement that appellant specify that its goods are sold in a container. It is within the discretion of the PTO to require that one's goods be identified with particularity, in this instance to indicate that the goods are packaged in a container to which the mark refers. In *Golden Gate Salami Co. v. Gulf States Paper Corp.*, 51 CCPA 1391, 332 F.2d 184, 141 USPQ 661 (1964), this court held that the mark E–Z OPEN PAK was properly registrable for goods identified as "packaged luncheon meats in a cellophane tear open package." A similar manner of identification would be equally appropriate here.

Appellant apparently sought to avoid particularizing its goods in order to make the argument that the word "SELECTOR" is arbitrary with respect to fishing weights. We find this argument as specious here as it was in *J. Kohnstam Ltd. v. Marx & Co.*, 47 CCPA 1080, 280 F.2d 436, 126 USPQ 362 (1960), where MATCHBOX was found unregistrable for "toys", which the specimens showed were sold in matchbox–type containers. *Cf. In re Geo. A. Hormel & Co.*, 155 USPQ 32 (TTAB 1967), and cases cited therein. We agree with the board that the descriptiveness or genericness of a claimed mark may be determined by consideration of the container in which an applicant sells its goods. Whether the appliance has been required, as here, to include a statement that his goods are "packaged" is immaterial to this determination. How the mark is used in the marketplace and what it means to the public are the appropriate considerations, not a technicality of what language appears in an application.

In view of the affirmance of the refusal to register on the above grounds, we do not reach the question of whether the words SINKER SELECTOR are incapable of functioning as a mark, a basis for refusal of registration added by the board. This issue was not before the board. The registrability of SINKER SELECTOR was not a matter of contention between the examiner and appellant after appellant amended its application to the Supplemental Register. Where the board perceives a ground of rejection not asserted by the examiner, basic fairness requires that the applicant be given an opportunity to develop and present its position before any ruling is made.

The refusal to register for the reasons stated is *affirmed.*

AFFIRMED.

---

**6.** The board noted in footnote 1, 204 USPQ at 263:

In those situations where matter such as this is employed as a part of a composite mark which otherwise constitutes registrable matter on the Principal Register, the recommended practice is to require a disclaimer thereof in accordance with Section 6 of the statute.

Section 6 is equally applicable to the Supplemental Register. *In re Wella Corp.*, 565 F.2d 143, 196 USPQ 7 (Cust. & Pat.App.1977).