THIS DISPOSITION IS NOT
CITABLE AS PRECEDENT OF THE TTAB    MARCH 30,99

Paper No. 16
RLS/AKP

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

In re Parkway Machine Corporation
_____

Serial No. 74/595,978
_____

Maurice U. Cahn of Cahn & Samuels, LLP for Parkway Machine
Corporation

Angela Lykos, Trademark Examining Attorney, Law Office 102
(Thomas Shaw, Managing Attorney)
_____

Before Simms, Walters and Bucher, Administrative Trademark
Judges.

Opinion by Simms, Administrative Trademark Judge:

Parkway Machine Corporation, a Maryland corporation, has

appealed from the final refusal of the Trademark Examining

Attorney to register the asserted mark shown below

for coin-operated vending machines.[1]  In an amendment, applicant

describes its mark as follows:

> The mark consists of the beveled facing
> of a coin operated bulk vending machine
> incorporating a coin receiving
> mechanism and a merchandise chute cover
> located laterally from the coin
> receiving mechanism.[2]

It is the Examining Attorney's position that the asserted mark

is not inherently distinctive and that the evidence of acquired

distinctiveness is insufficient to permit registration.[3]  Because

---

[1] Application Ser. No. 74/595,978, filed November 7, 1994, based upon
an allegation of use in commerce since at least as early as July 1,
1987.  In the application, applicant stated that the dotted lines of
the drawing depict the position of the mark and do not comprise part
of the mark.  Applicant's machines are commonly known as "gumball
machines," according to applicant's attorney.

[2] Although this description of the mark refers to a "beveled facing,"
no beveling appears in the drawing of the mark.

[3] In the Examining Attorney's final refusal issued March 3, 1997, the
Examining Attorney indicated that there were "two legal grounds" on
which this asserted mark had been refused: "(1) the proposed mark
appears to be *de facto* functional... and (2) the proposed mark is a
configuration of the goods which is not inherently distinctive."  In
her final refusal, however, she discussed these two "grounds" as well
as the alleged insufficiency of the evidence in support of the claim
of acquired distinctiveness.  Her brief also addresses all of these
"grounds."  That an asserted mark, which is a product configuration
(or part thereof) or trade dress, may perform some function and
therefore be *de facto* functional is not a ground for refusal.  Rather,
*de jure* functionality, where an asserted mark represents a superior
design essential for competition, is a proper ground for refusal.  See
Section 2(e)(5) of the Trademark Act, 15 USC §1052(e)(5)(eff. Oct. 30,
1998).  The differences between the concepts of *de jure* and *de facto*
functionality are discussed in a number of cases including the seminal
case of In re Morton-Norwich Products, Inc., 740 F.2d 1550, 213 USPQ 9
(CCPA 1982).  The container in that case, for example, was *de facto*
functional because it performed the function of holding applicant's
liquid product.  Suffice it to say that any product or product
container that has utility may be considered to have a *de facto*
function.
    Although the Examining Attorney at one time during the
prosecution of this case refused registration because the asserted

applicant has amended its application to one under Section 2(f)

of the Act, 15 USC §1052(f), and because applicant does not

seriously argue that the asserted mark is inherently

distinctive,[4] we focus on the evidence and arguments relating to

acquired distinctiveness.

In support of registration, applicant relies upon the fact

that its asserted mark has been in use for over five years, and

applicant has submitted three declarations of bulk purchasers

---

mark was *de jure* functional, the Examining Attorney subsequently
withdrew that refusal.
[4] For example, in applicant's brief, 5, applicant states:

> A further factor that is not in dispute and
> supports acquired distinctiveness is that the
> configuration at issue has been used for more
> than five years by Applicant and Applicant's
> predecessor-in-interest.  Applicant appreciates
> that the length of use is not dispositive for
> highly descriptive marks, but such evidence should
> not be "undervalued" in support of registration...

In any event, as to the question of inherent distinctiveness, we have
in the past resolved such an issue by looking to the guidance of our
primary reviewing court.  See, for example, In re Jon P. File, 48
USPQ2d 1363 (TTAB 1998), and In re Hudson News Co., 39 USPQ2d 1915
(TTAB 1996).  In Seabrook Foods, Inc. v. Bar-Well Foods, Ltd., 568
F.2d 1342, 196 USPQ 289, 291 (CCPA 1977), the Court looked to whether
the trade dress

> was a "common" basic shape or design, whether it
> was unique or unusual in a particular field, [or]
> whether it was a mere refinement of a commonly-
> adopted and well-known form of ornamentation for
> a particular class of goods viewed by the public
> as a dress or ornamentation for the goods[.]

Suffice it to say that, if we were to reach the issue of inherent
distinctiveness, applicant's asserted mark cannot be considered
immediately recognizable as a distinctive way of identifying
applicant's goods but is rather a common design or a mere refinement
of an ordinary coin mechanism and merchandise chute.

who are familiar with the coin-operated bulk vending machine industry and with applicant's coin-operated bulk vending machines sold under the mark "Victor 77." According to those declarants, applicant's machines include "a uniquely configured coin mechanism cover and merchandise chute cover mounted side-by-side which together establish the face of the forwardly beveled front of the machine base." These declarants further state that, by reason of this configuration and in view of the promotional materials and advertising featuring these machines, "the configuration is distinctive and has become synonymous with Parkway Machine Corporation as the source of the machines and indicates to me that coin-operated bulk vending machines so configured are manufactured by Parkway Machine Corporation..." Further, in support of registration, applicant points to its ownership of three other registrations covering different configurations of coin mechanism covers and merchandise chute covers.

Additionally, applicant has submitted a product catalog which, in addition to machines bearing the asserted mark herein sought to be registered, also portray a variety of its different coin-operated bulk vending machines with different configurations of the coin mechanism and merchandise chute cover. Applicant notes that the consumers of its products are bulk vending machine operators and vending equipment

4

distributors, who are sophisticated purchasers.  Therefore, according to applicant, less proof is required to show acquired distinctiveness of the asserted mark.  Applicant also argues, as noted above, that it has obtained three registrations covering slightly different configurations and that it is desirable for the Office to avoid different and inconsistent results in connection with its various applications.[5]

As noted, the Examining Attorney preliminarily took the position that applicant's coin mechanism and delivery chute cover is not inherently distinctive because such design features are typical of vending machines.  Because the asserted mark is something not ordinarily perceived as a trademark, the Examining Attorney argues that prospective purchasers are not likely to view the beveled facing front of applicant's vending machines as a trademark.  According to the Examining Attorney, applicant's design is not highly unusual or extraordinary, but merely a rectangular and square shape (unlike the hexagonal or octagonal

---

[5] We note that the mark (shown below) reproduced on page two of applicant's main brief does not present the mark herein sought to be registered.  This appears to be an artist's rendition of the Victor 77 rather than the Victor 88 machine shown in the drawing of this case. (See discussion on pp. 7-9 of this opinion.)

designs of applicant's existing registrations). Given the prosaic appearance of this design, the Examining Attorney argues that the evidence of a small number of people who assert that they associate the alleged mark with applicant is insufficient to permit registration under Section 2(f) of the Act. Further, the Examining Attorney argues that applicant has submitted no sales and advertising figures to indicate the level of exposure of applicant's asserted mark to the relevant public. Nor, according to the Examining Attorney, does applicant's product literature mention or emphasize the asserted mark. According to this record, applicant has made no effort to encourage the relevant public to identify applicant's asserted mark as a trademark, the Examining Attorney argues. Rather, applicant's catalogs merely depict the product in photographs. Accordingly, the Examining Attorney argues that potential purchasers are likely to view the facing of applicant's vending machines as just part of those machines. The Examining Attorney has submitted evidence of third-party use of similar product designs from Web-site catalogs of competing manufacturers which assertedly show similar beveled facings used on coin-operated vending machines. Some of those designs are shown below. (Others would not adequately reproduce.)

Upon careful consideration of this record and the arguments, we believe that applicant's evidence of acquired distinctiveness is insufficient to permit registration. First, applicant's declarations are fatally flawed. All of them refer to the "unique configuration of the…Victor 77 machines."

> …[T]he configuration of the Victor 77 machine includes a uniquely configured coin mechanism cover and merchandise chute cover mounted side-by-side which together establish the face of the

           forwardly beveled front of the machine
           base.

However, the Victor 77 machine to which all the declarants refer

has a merchandise chute which is flush with the top of the coin

mechanism (see below)

and not lower than the coin mechanism, as in the instant

application. The "mark" of this application appears to be of

the model applicant calls "Victor 88." See below.

The declarations, therefore, do not support registration of the mark here sought to be registered, but rather a different configuration of a coin mechanism and chute cover. We do not address whether these declarations would be sufficient to establish acquired distinctiveness of the design of the Victor 77 machine.

Aside from this serious problem, the declarations do not note what it is about the design of applicant's coin mechanism and chute cover that is particularly unique or distinctive. It would have been helpful, for example, if applicant's declarations had indicated what particular feature or features of its asserted mark is or are unique or unusual. See, for example, In re Sandberg and Sikorski Diamond Corp., 42 USPQ2d 1544 (TTAB 1996).

The existence of applicant's other registrations covering different marks is largely irrelevant to the question of acquired distinctiveness of the instant mark. We note that those registrations depict matter having substantially different and arguably recognizable features (e.g., octagonal coin mechanisms) not present in the existing application.

Also, although it may be true that the record does not contain any examples of competitors using the exact configuration applicant seeks to register, a particular configuration does not become distinctive merely because no

9

other manufacturer uses that particular configuration.  In re E

S Robbins Corp., 30 USPQ2d 1540, 1542 (TTAB 1992).  As we stated

in that case, at 1542:

> Thus, while applicant's applied for
> design may be unique in the sense that
> it is a "one and only," the record
> demonstrates that said design is not
> unique in the sense it has an
> "original, distinctive, and peculiar
> appearance."

Because of the relatively nondistinctive nature of the asserted

mark, we believe that the level of proof needed for acquired

distinctiveness is substantially higher than if the features

were more unusual in nature.

We find that applicant's evidence of acquired

distinctivenes does not relate specifically to the promotion and

recognition of the specific configuration sought to be

registered.  As indicated, the declarations of a small number of

bulk purchasers who allegedly associate this mark with applicant

are less than helpful, and the advertising only depicts

photographs of applicant's various vending machines with

different coin mechanism and merchandise slot covers.  In other

words, applicant does not use a single configuration of its coin

mechanism and merchandise chute cover in connection with its

bulk vending machines, but a number of different configurations.

10

Applicant has not promoted the asserted mark herein as a trademark and does not mention the asserted mark in its product catalogs.  While the product design in question may appear in advertisements, there is nothing to indicate that purchasers would view the features in question as more than a part of the goods depicted.  See In re Pingel Enterprise Inc., 46 USPQ2d 1811 (TTAB 1998).  Moreover, there is no evidence to support recognition by the ultimate purchasers (rather than the bulk purchasers or distributors of these goods) of these features as an indication of origin.  In this regard, what our primary reviewing court stated in In re Water Gremlin Company, 635 F.2d 841, 208 USPQ 89, 91 (CCPA 1980), in the context of a holding of functionality, is noteworthy with respect to applicant's asserted mark and its lack of distinctiveness:

> On the other hand, a merchant who *wishes* to set himself apart has no dearth of means to do so.  One who chooses a commonplace design for his package, or one different from competitors only in essentially functional features, even if he is the first to do so, must expect to have to identify himself as the source of goods by his labelling or some other device.

Decision: The refusal of registration is affirmed.

R. L. Simms

C. E. Walters

D. E. Bucher
Administrative Trademark
Judges, Trademark Trial and
Appeal Board