This Opinion is a
Precedent of the TTAB

Mailed: July 14, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*In re Morgan Brown*

————

Serial No. 86362968

————

Matthew H. Swyers of The Trademark Company,
    for Morgan Brown.

Jeffrey J. Look, Trademark Examining Attorney, Law Office 108,
    Andrew Lawrence, Managing Attorney.

————

Before Taylor, Bergsman and Adlin,
    Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

Morgan Brown ("Applicant") seeks registration on the Principal Register of the mark HERBAL ACCESS (in standard characters) for "retail store services featuring herbs," in International Class 35.[1] Applicant disclaimed the exclusive right to use the word "herbal."

The Trademark Examining Attorney refused registration of Applicant's mark under Sections 1 and 45 of the Trademark Act, 15 U.S.C. §§ 1051 and 1127, on the

---

[1] Application Serial No. 86362968 was filed on August 11, 2014, based upon Applicant's claim of first use anywhere and use in commerce since at least as early as July 21, 2014.

ground that the herbs offered for sale in Applicant's retail store include marijuana, a substance which cannot be lawfully distributed or dispensed under federal law.

We have consistently held that, to qualify for a federal service mark registration, the use of a mark in commerce must be "lawful." *E.g.*, *The John W. Carson Found. v. Toilets.com, Inc.*, 94 USPQ2d 1942, 1947-48 (TTAB 2010); *In re Midwest Tennis & Track Co.*, 29 USPQ2d 1386, 1386 n.2 (TTAB 1993); *In re Stellar Int'l, Inc.*, 159 USPQ 48, 50-51 (TTAB 1968). Thus, any goods or services for which the mark is used must not be illegal under federal law. *See, e.g.*, *In re Midwest Tennis & Track Co.*, 29 USPQ2d at 1386 n.2 (noting that "[i]t is settled that the Trademark Act's requirement of 'use in commerce,' means a 'lawful use in commerce,' and [that the sale or] the shipment of goods in violation of [a] federal statute . . . may not be recognized as the basis for establishing trademark rights'." (quoting *Clorox Co. v. Armour-Dial, Inc.*, 214 USPQ 850, 851 (TTAB 1982)); *In re Pepcom Indus., Inc.*, 192 USPQ 400, 401 (TTAB 1976). Thus, the fact that the provision of a product or service may be lawful within a state[2] is irrelevant to the question of federal registration when it is unlawful under federal law.[3]

---

[2] Applicant is located in the State of Washington where adults can possess 1 ounce of useable marijuana, 16 ounces of marijuana-infused product in sold form, and 72 ounces of marijuana-infused product in liquid form pursuant to RSW § 69.50.101 *et. al.*

[3] We need not, and do not, address in this decision the question whether a product or service lawful under federal law, but not under state law, may be considered unlawful use and insufficient to support a federal registration. Similarly, we do not address whether use not lawful under federal law, but not prosecuted by federal authorities, is thereby rendered sufficiently lawful to avoid the unlawful use refusal.

Generally, the USPTO presumes that an applicant's use of a mark in commerce is lawful under federal law. Thus, registration generally will not be refused based on unlawful use in commerce unless either (1) a violation of federal law is indicated by the application record or other evidence, such as when a court or a federal agency responsible for overseeing activity in which the applicant is involved, and which activity is relevant to its application, has issued a finding of noncompliance under the relevant statute or regulation, or (2) when the applicant's application-relevant activities involve a *per se* violation of a federal law. *See Kellogg Co. v. New Generation Foods Inc.*, 6 USPQ2d 2045, 2047 (TTAB 1988); *Santinine Societa v. P.A.B. Produits,* 209 USPQ 958, 964 (TTAB 1981) (petition for cancellation on ground of failure of registrant to comply with labeling requirements for cosmetics dismissed); *see also id.* at 967 ("I agree completely that it would be anomalous for the Patent and Trademark Office to accord recognition to the use of a mark when the use relied upon was unlawful. To cite an extreme example, it would be unthinkable to register a mark for use on heroin.") (Kera, member, concurring).

The Examining Attorney does not contend that a finding of noncompliance covers the case at hand and relies on an asserted *per se* violation of federal law by Applicant, in certain activities in which Applicant is engaged, which are encompassed by the identification of services. The Examining Attorney relied upon the evidence set forth below to support the unlawful use refusal. The evidence establishes that Applicant's retail store services include the provision of marijuana:

1. Applicant's specimen of use, submitted with his application, features two photographs of Applicant's retail establishment. One photograph includes a green cross prominently displayed on a window with a larger image of what appears to be the same green cross superimposed over the photograph. The second photograph appears to be a close-up image of the door next to the window with the green cross. The wording HERBAL ACCESS appears on the door.

2. Applicant's website (herbalaccess.com) homepage displays the following advertising text for its retail services superimposed over a picture of a marijuana plant inviting customers to "stop by" the store to "find exactly what you are looking for":

   > Your Access Is Granted!
   >
   > Call or stop by today and find out why people consider our marijuana to be the best of the best!
   >
   > Now Come Check Us Out![4]

   The webpage also includes a map showing the location of the retail establishment that includes the wording "Marijuana For The Masses."

As noted above, applicant's specimen showing use of the mark HERBAL ACCESS in connection with its retail services also includes two images of a green cross. The evidence from Jeff Duntemann's Contrapositive Diary (contrapositivediary.com),[5]

---

[4] June 30, 2015 Office Action.

[5] December 4, 2014 Office Action.

Every Joe website (everyjoe.com),[6] Amazon.com,[7] Patch.com,[8] and O'Shaughnessy's online (beyondthc.com),[9] clearly indicates that a green cross has become the symbol of the organized medical marijuana industry.

In addition, Applicant's website homepage encourages visitors to the page to call or stop by Applicant's retail establishment. The address and phone information, as well as the facility hours posted on the page are a further invitation to shop at applicant's establishment. The specimen and the webpage, taken together, support the conclusion that Applicant is engaged in the provision of marijuana via the retail services provided at the facility shown in the specimen and advertised on the website.

Thus, Applicant's services include the provision of an illegal substance, i.e., marijuana, in violation of the federal Controlled Substances Act (CSA), 21 USC §§ 812, 841(a)(1), 844(a). *See also* 21 U.S.C. § 802(16) (defining marijuana). The CSA prohibits, among other things, manufacturing, distributing, dispensing or possessing certain controlled substances, including marijuana and marijuana-based preparations. 21 U.S.C. §§ 812, 841(a)(1), 844(a).[10] Regardless of individual state laws that may provide for legal activities involving marijuana, marijuana and its

---

[6] *Id.*

[7] *Id.*

[8] June 30, 2015 Office Action.

[9] *Id.*

[10] In addition, the CSA makes it unlawful to sell, offer for sale, or use any facility of interstate commerce to transport drug paraphernalia (*i.e.,* "any equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance, possession of which is unlawful under [the CSA]."). 21 U.S.C. § 863.

psychoactive component, THC, remain Schedule I controlled substances under federal law and are subject to the CSA's prohibitions. 21 C.F.R. § 1308.11. *See also* U.S. Const. art. VI., cl. 2; *Gonzales v. Raich*, 545 U.S. 1, 27, 29 (2005); *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 491 (2001). In view of the foregoing, we find that there is a *per se* violation of the CSA and, therefore, Applicant's use of HERBAL ACCESS as evidenced by the record, includes unlawful activity under the CSA.[11]

Applicant argues that his recitation of services is "retail store services featuring herbs" and that there is nothing illegal about herbs; but acknowledges that he "may also sell marijuana" and that such sale is "admittedly illegal under the CSA."[12]

> The sale of herbs does not constitute a violation of the CSA. Notwithstanding this fact, the Examining Attorney issued the refusal based upon evidence that the Applicant may also sell marijuana through retail services legal in the Applicant's state although admittedly illegal under the CSA.[13]
>
> \*     \*     \*
>
> [T]here remains no evidence of actual use of the trademark in connection with the sale of marijuana.[14] Thus, the issue before the Board is a critical interpretation of the scope to which a refusal to register a trademark should be applied under the CSA. In short, to affirm the Examining Attorney's refusal to register the instant trademark in connection with the lawful selling of legal herbs is akin to pronouncing that a specific class of Applicant, namely

---

[11] This finding of fact should not be interpreted as a finding of criminal activity under federal law, which is a subject not within the Board's jurisdiction.

[12] Applicant's Brief, p. 5 (5 TTABVUE 6).

[13] *Id.*

[14] The argument ignores Applicant's own website and Facebook page evidence referenced *supra*.

> those who may also sell substances illegal under the CSA but legal in their respective states, may never be the holders of a federal trademark even if the trademark applied for is for use in connection with legal goods or services.[15]

The converse of this argument was rejected in *Santinine Societa v. P.A.B. Produits,* 209 USPQ at 966, wherein the petitioner argued that an unrestricted identification contemplated that the registrant might change its marketing in the future to a method that would violate applicable federal labeling requirements. In the case at hand, the evidence bears on what Applicant is now engaged in and is not dependent on what Applicant might do in the future. Likewise, the identification of services contemplates the services that the Applicant is engaged in, in violation of the CSA, so there is no need to speculate on whether there is unlawful use. The mere fact that lawful use is also contemplated by the identification does not aid Applicant's cause.

This is analogous to how we assess the scope of the identification of goods and services in other contexts. Thus, in cases involving whether a mark is descriptive, we look to whether the mark would be descriptive of any specific goods or services that fall within the identification of goods and services, or even any subset of such goods or services. *See* TMEP § 1209.01(b) and cases cited therein. After all, if the application matures into a registration, it will be presumed to include all types of specific goods and services that fall with the identification in the registration. *See, e.g.*, *Canadian Imperial Bank of Commerce v. Wells Fargo Bank, Nat'l Ass'n*, 811 F.2d 1490, 1492-

---

[15] Applicant's Brief, p. 6 (5 TTABVUE 7).

93, 1 USPQ2d 1813, 1815 (Fed. Cir. 1987) (registrability decisions must be made in the context of the goods or services described in the application, "because any registration that issues will carry that description" and because "although a registrant's current business practices in connection with which the mark is used may be quite narrow, they may change at any time") (internal quotation marks, brackets, and citation omitted). Accordingly, it was entirely proper for the Trademark Examining Attorney to look to evidence such as the Applicant's specimen of use and website to ascertain that the word "herbs" in the description of services encompasses marijuana.

There is also objective evidence in the record that marijuana is an "herb."[16] Moreover, Applicant does not dispute that marijuana is an herb or that Applicant sells marijuana. As mentioned above, Applicant argues only the Examining Attorney's evidence does not specifically show the use of the mark *specifically in connection with one particular herb*: marijuana. This argument does not directly address or rebut the evidence that marijuana is an herb and Applicant sells marijuana. The Federal Circuit has previously rejected attempts to use generalized language in goods and services identifications in order to sidestep refusals where a particular good or services falls within the generalized identification and the evidence shows the applicant's actual usage involves the specific good or service that is the subject of the refusal. *See, e.g.*, *In re Reed Elsevier Props. Inc.*, 482 F.3d 1376, 1379, 82 USPQ2d 1378 (Fed. Cir. 2007) (avoiding the word "lawyers" in the identification

---

[16] Dec. 4, 2014 Office action.

of services); *In re Water Gremlin Co.*, 635 F.2d 841, 208 USPQ 89 (CCPA 1980) (avoiding the word "sinker"); *In re Am. Soc'y of Clinical Pathologists, Inc.*, 442 F.2d 1404, 169 USPQ 800 (CCPA 1971) (avoiding the term "registry").

Because the evidence that Applicant's mark is being used in connection with sales of a specific substance (marijuana) that falls within both the services identification and the prohibitions of the CSA is unrebutted,  we find that Applicant's retail store services include sales of a good that is illegal under federal law, and therefore encompasses a use that is unlawful.

**Decision**: The refusal to register Applicant's mark HERBAL ACCESS is affirmed.