This Opinion is a Precedent
of the TTAB

Mailed: June 7, 2021

UNITED STATES PATENT AND TRADEMARK OFFICE

Trademark Trial and Appeal Board

————

*In re SICPA Holding SA*

————

Serial No. 88488405

————

P. Jay Hines of Muncy, Geissler, Olds & Lowe, P.C.
  for SICPA Holding SA.

Brian Pino, Trademark Examining Attorney, Law Office 114,
  Laurie Kaufman, Managing Attorney.

————

Before Cataldo, Adlin and Heasley, Administrative Trademark Judges.

Opinion by Adlin, Administrative Trademark Judge:

Applicant SICPA Holding SA seeks registration of SHIFTMAG, in standard characters, for "security consulting in the nature of professional consulting on magnetic stripe color shifting smart designs based on liquid crystal technology for visual card authentication, embed protection and brand identity customization," in International Class 35.[1] The Examining Attorney refused registration on three grounds: (1) the identification of services is indefinite; (2) Applicant failed to respond adequately to a request for information under Trademark Rule 2.61(b), 37 C.F.R.

[1] Application Serial No. 88488405, filed June 25, 2019 under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), based on an alleged bona fide intent to use the mark in commerce.

§ 2.61(b); and (3) Applicant's mark so resembles the previously-registered mark SHIFT4, in standard characters, for computer software and related services in the electronic payment and credit card field[2] as to be likely to cause confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d). After the refusal became final, Applicant appealed and filed a request for reconsideration which was denied. The appeal is fully briefed. We affirm the refusal on the first two grounds, and do not reach the third.

## I. Is the Identification of Services Indefinite?

Applicant originally identified its services as "security consulting, particularly professional consulting on security elements enabling card authentication and identification," without specifying an International Class. The Examining Attorney found the identification indefinite and required Applicant to clarify "the nature of the type of security consulting because security services may be classified in at least two classes." September 23, 2019 Office Action TSDR 5.[3] The Examining Attorney proposed that Applicant consider amending its identification to "**data** security consulting, particularly consulting on security elements enabling card authentication and identification in International Class 42." *Id.*

---

[2] Registration No. 4404342, issued September 17, 2013; Section 8 Affidavit accepted, Section 15 Affidavit acknowledged.

[3] Citations to the examination record refer to the USPTO's Trademark Status & Document Retrieval ("TSDR") system's online database, by page number, in the downloadable .pdf format. In citations to the Board's online docketing system, TTABVUE, the number preceding "TTABVUE" corresponds to the docket entry number(s), and any number(s) following "TTABVUE" refer to the page number(s) of the docket entry where the cited materials appear.

Applicant rejected this suggestion. Instead, it amended its identification as indicated above, to "security consulting in the nature of professional consulting on magnetic stripe color shifting smart designs based on liquid crystal technology for visual card authentication, embed protection and brand identity customization," in International Class 35. March 3, 2020 Office Action Response TSDR 4.

The Examining Attorney argues that both the original and amended identification are indefinite "because the services cannot be properly classified and the Office, and the public cannot, determine the nature of the services sufficiently for Section 2(d) likelihood of confusion purposes." 8 TTABVUE 16. Specifically, the Examining Attorney argues that: (1) "security services may be classified in at least two classes, e.g. data security consulting in International Class 42 or physical security consulting in International Class 45; (2) "the proposed mark appears to be used in relation to a product feature rather than as a service mark;" and (3) to the extent Applicant is offering a service, it "appears to be more in the nature of a design and development service … and certainly not a security service as understood by the Office." *Id*. at 18.

Applicant counters that the Examining Attorney's proposed amendment to "**data** security …" is "inaccurate" because "Applicant does not do data security." Rather, "Applicant is a one-of-a-kind business entity," and the services Applicant offers are "not in the ID Manual." 6 TTABVUE 8. As Applicant puts it in its Reply Brief, "[n]ot everything in the world is in the ID Manual."[4] 9 TTABVUE 4.

---

[4] The ID Manual lists properly classified and acceptable identifications of goods and services. It is not exhaustive, but rather is intended as a guide to examining attorneys and the public.

We agree with the Examining Attorney. "An applicant must identify the goods and services specifically to provide public notice and to enable the USPTO to classify the goods and services properly and to reach informed judgments concerning likelihood of confusion under 15 U.S.C. § 1052(d)." *In re Fiat Grp. Mktg. & Corp. Commc'ns. S.p.A.*, 109 USPQ2d 1593, 1597 (TTAB 2014); *In re Faucher Indus.*, 107 USPQ2d 1355, 1358 (TTAB 2013); Trademark Rule 2.32(a)(6) (application must include a "list of the **particular** goods or services on or in connection with which the applicant uses or intends to use the mark") (emphasis added). Thus, "[i]t is within the discretion of the PTO to require that one's goods be identified with particularity." *In re Omega SA*, 494 F.3d 1362, 83 USPQ2d 1541, 1544 (Fed. Cir. 2007) (quoting *In re Water Gremlin Co.*, 635 F.2d 841, 208 USPQ 89, 91 (CCPA 1980)).

For example, in *In re Omega*, the applicant sought to register its mark for "jewelry, precious stones; watches, watch straps, watch bracelets and parts thereof; chronometers, chronographs, watches made of precious metals, watches partly or entirely set with precious stones" in International Class 14. The examining attorney required that "chronographs" be identified more specifically, because that term could refer to watches, which fall within Class 14, or to time recording instruments, which fall within Class 9. The Federal Circuit upheld the Board's decision affirming the examining attorney's requirement, agreeing that "the scope of the term

---

Computer and technology services for securing computer data or personal and financial information and detecting unauthorized access are in Class 42 and physical security services for protecting tangible property and individuals are in Class 45. TRADEMARK MANUAL OF EXAMINING PROCEDURE ("TMEP") §§ 1401.14(e), 1402.04 (Oct. 2018).

4

'chronographs' is ambiguous for registration purposes," because it includes both watches and time recording devices. *Omega*, 83 USPQ2d at 1544.

This case is analogous, in that the scope of the term "security" in Applicant's original and amended identification of services is ambiguous. As the Examining Attorney points out, it is unclear whether the term refers to data security, as suggested by the services relating to "card authentication and identification," or to physical security. *See* TRADEMARK MANUAL OF EXAMINING PROCEDURE ("TMEP") §§ 1402.01, 1402.03 (Oct. 2018) ("Terminology that includes items in more than one class is considered indefinite …."). Applicant claims that it "does not do data security," 6 TTABVUE 8, but this does not make the identification unambiguous.

Furthermore, the Examining Attorney argues that Applicant's identification as drafted can be read as relating to the design of a product, rather than security services. In particular, Applicant submitted examples of use that suggest it offers a SHIFTMAG product, or a product with a SHIFTMAG feature, rather than a SHIFTMAG service. For example, SHIFTMAG refers to an "innovative magnetic tape with colour-shifting design for unparalleled card security":



March 3, 2020 Office Action Response TSDR 25. The magnetic tape is described as "an innovation for secure cards bringing three aspects into one powerful solution: colour-shifting for visual authentication, inherent polarization for embedded protection and multi-coloured smart design for brand identity customization." *Id.* at 26. This tends to suggest a product, not a service.

While Applicant's product may very well be "one-of-a-kind," that does not excuse Applicant from complying with the requirement to identify its goods or services with sufficient particularity and in an understandable way. Goods and services implementing emerging technologies, by their very nature, may not to be represented in the ID Manual. Nonetheless, the Trademark Rules and decisional law require an applicant to identify its goods or services in a clear manner that permits proper classification. Applicant did not do so here, however. Therefore the refusal based on the identification of services being indefinite is affirmed.

## II. Did Applicant Comply With the Information Requirement?

Under Trademark Rule 2.61(b), "[t]he Office may require the applicant to furnish such information ... as may be reasonably necessary to the proper examination of the application." *See* TMEP § 814. Equivocal, vague or evasive responses are unacceptable. *In re AOP LLC*, 107 USPQ2d 1644, 1651 (TTAB 2013). Noncompliance with an information requirement is an independent ground for refusing registration, separate and apart from any substantive grounds for refusal. *In re Cheezwhse.com Inc.*, 85 USPQ2d 1917, 1919 (TTAB 2008); *In re DTI P'ship LLP*, 67 USPQ2d 1699, 1701-02 (TTAB 2003); TMEP § 814. Furthermore, when an applicant fails to provide requested information, it may be presumed that had it been provided, the information

would have been unfavorable to the applicant. *See In re Cheezwhse.com*, 85 USPQ2d at 1919, 1921.

Here, in the first Office Action, the Examining Attorney requested the following information:

> 1. Does SHIFT, MAG, SHIFT MAG, or SHIFTMAG have any significance as applied to the goods and/or services other than trademark and/or service mark significance?

> 2. Does SHIFT, MAG, SHIFT MAG, or SHIFTMAG have any significance in the relevant trade or industry other than trademark and/or service mark significance?

> 3. If available, the applicant will provide a website address at which the goods and/or services are offered and/or the mark is used. If no website is available, then the applicant will state this fact for the record.

> 4. Does the applicant manufacture or offer any of the goods and/or services that appear in the registrant's identification of goods and/or services?

> 5. Is the applicant aware of any other company and/or person(s) that provides both the goods and/or services, in whole or in part, listed in both the applicant's identification and the registrant's identification(s)? If so, the applicant must provide the name of the company and/or person(s) and any available website address for the same. The applicant need not provide more than five references per each cited registration.

> 6. To permit proper examination of the application, applicant must submit additional information about applicant's services because the nature of such services is not clear from the present record. *See* 37 C.F.R. 2.61(b); TMEP §§ 814, 1402.01(e). The requested information should include fact sheets, brochures, and/or advertisements and promotional materials. If these materials are unavailable, applicant should submit similar documentation for services of the same type, explaining how its own services will differ. If the services feature new

Serial No. 88488405

> technology and no information regarding competing services is available, applicant must provide a detailed factual description of the services.

September 23, 2019 Office Action TSDR 6-7. Applicant responded to the Office Action, but answered none of these questions. *See* March 3, 2020 Office Action Response.

The Examining Attorney issued a final Office Action on March 16, 2020, slightly revising the first five information requests and deleting the sixth, but repeating the essential requirement that Applicant provide the requested information. March 16, 2020 Office Action TSDR 6-7. Applicant, understanding the implication of a Final Office Action, appealed and simultaneously requested reconsideration.

In its request for reconsideration – its final opportunity to answer the remaining five information requests – Applicant responded:

> The composite mark SHIFTMAG is a coined term that has no overall significance in relation to the services. The component "Shift" was coined by Applicant in relation to its color technology. The component "Mag" refers to the magnetic technology involved. But the combination functions solely as a source identifier that has no significance in this very specialized industry.

September 16, 2020 Request for Reconsideration TSDR 1. Obviously, Applicant failed to respond at all to Request Nos. 4-5.[5]

It was not until it filed its Appeal Brief that Applicant finally provided answers to Request Nos. 4-5. 6 TTABVUE 8. But that was too late. Trademark Rule 2.142(d)

---

[5] Applicant provided a screenshot which may partially answer Request No. 3. September 16, 2020 Request for Reconsideration TSDR 47.

("The record in an application should be complete prior to the filing of an appeal.").[6] The point of a requirement under Trademark Rule 2.61(b) is to obtain information useful in *examining* an application. The Rule is designed to encourage high-quality, efficient examination and recognizes that an applicant often is in the best position to provide the facts and information the examining attorney needs to properly assess registrability. *Cf. Star Fruits, S.N.C. v. U.S.*, 393 F.3d 1277, 73 USPQ2d 1409, 1414 (Fed. Cir. 2005) (discussing analogous Rule 1.105 in patent examination and explaining that an applicant's refusal to comply with an information requirement "inefficiently shifts the burden of obtaining information that the applicant is in the best position to most cheaply provide onto the shoulders of the Office and risks the systemic inefficiencies that attend the issue of invalid [trademark registrations]. Examination under such circumstances is neither fair and equitable to the public nor efficient."). The Rule's purpose is thwarted, proceedings are unduly prolonged, and the expenditure of agency resources is needlessly increased if the information is not provided until examination is over and the application is on appeal before the Board. The Examining Attorney's objection to Applicant's "attempt to untimely respond to the information requirement," 8 TTABVUE 5, 19, is therefore sustained. This refusal

---

[6] Applicant could have avoided this problem by requesting a remand in order to respond to the information request. *See In re Ox Paperboard, LLC*, 2020 USPQ2d 10878 at *1-3 (TTAB 2020).

rooted in Applicant's failure to comply with the Rule 2.61(b) requirement for information is also affirmed.[7]

## III. Likelihood of Confusion

Applicant's failure, during prosecution, to adequately respond to all of the requests for information, or to agree with the Examining Attorney on an acceptable identification of goods or services, makes it impossible to properly analyze the likelihood of confusion refusal. We therefore decline to reach that refusal. *Cf. In re DTI P'ship*, 67 USPQ2d at 1702 ("Applicant's failure to comply with the Trademark Rule 2.61(b) requirement is a sufficient basis, in itself, for affirming the refusal to register applicant's mark. Moreover, our ability to fully and accurately assess the substantive merits of the mere descriptiveness issue has been hindered by applicant's failure to submit the information and materials which were properly requested by the Trademark Examining Attorney under Trademark Rule 2.61(b).").

## IV. Conclusion

The USPTO and the public require an understandable identification of goods or services. *See In re Gulf Coast Nutritionals, Inc.*, 106 USPQ2d 1243, 1247 (TTAB 2013). In this case, the identification of services is at best unclear, and it may be inaccurate. While the Examining Attorney attempted to engage Applicant in a dialogue about the identification of services and other aspects of the application,

---

[7] Applicant never objected to the requirements, and in any event, each unanswered requirement for information was reasonable, relevant to examination of the application and within the scope of Trademark Rule 2.61(b). Applicant was required to respond to the requirements, but failed to timely do so.

10

including through information requests, Applicant, despite having two opportunities to respond to the Examining Attorney, was not sufficiently forthcoming, making a fair and complete consideration of the substantive issue (likelihood of confusion) impossible.

**Decision**: The refusal to register on the grounds that Applicant failed to comply with a request for information under Trademark Rule 2.61(b), or to provide a sufficiently definite identification of services, is affirmed on both grounds.