**This Opinion is a
Precedent of the TTAB**

Mailed: November 8, 2021

UNITED STATES PATENT AND TRADEMARK OFFICE
——

Trademark Trial and Appeal Board
——

*In re Maugus Manufacturing, Inc.*
——

Serial No. 88389863
——

Joseph R. Falcon III of Barley Snyder,
    for Maugus Manufacturing, Inc.

Tejbir Singh, Trademark Examining Attorney, Law Office 106,
    Mary I. Sparrow, Managing Attorney.

——

Before Lykos, Kuczma and Greenbaum,
    Administrative Trademark Judges.

Opinion by Greenbaum, Administrative Trademark Judge:

This case involves a refusal under Sections 1, 2 and 45 of the Trademark Act, 15 U.S.C. §§ 1051, 1052 and 1127, namely, whether the specimens show use of the proposed mark as a source identifier for the identified goods.

## I.   Background

Maugus Manufacturing, Inc. ("Applicant") seeks registration on the Principal Register of the mark DRINK MORE BEER (in standard characters) for

Non-metal and non-paper closures for containers, in International Class 20.[1]

Applicant filed two specimens with its October 28, 2019 Statement of Use ("SOU"). The first specimen, reproduced in full below, consists of a screenshot of Applicant's product webpage (with no capture date). SOU, TSDR 2 ("webpage specimen"). The webpage specimen displays the initialism NNBC and design in a relatively large bold font on the left side of the webpage banner, above images of six product categories, displayed in two rows of three.[2] The images in the bottom row, from left to right, are for "COMPRESSION MOLDED CAPS," "GROWLER CAPS" and "METAL CLOSURES." The image for "GROWLER CAPS" shows three caps with the wording "DRINK MORE BEER" (the proposed mark) embossed around a design of a beer mug. The webpage specimen appears as follows:

---

[1] Application Serial No. 88389863 was filed on April 17, 2019, based upon Applicant's allegation of a bona fide intention to use the mark in commerce under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b). On October 28, 2019, Applicant filed a Statement of Use under Section 1(d) of the Trademark Act, 15 U.S.C. § 1051(d), alleging July 16, 2018 as the date of first use anywhere and first use in commerce.

[2] According to the NNBC "ABOUT US" webpage, made of record by the Examining Attorney, Applicant does business under the name National Novelty Brush Company (NNBC). February 4, 2021 Request for Reconsideration Denied, TSDR 14.

Citations to the examination record refer to the USPTO's Trademark Status & Document Retrieval ("TSDR") online database. References to the briefs on appeal refer to the Board's TTABVUE docket system. Before the TTABVUE designation is the docket entry number; and after this designation are the page references, if applicable.



The second specimen submitted with Applicant's SOU, reproduced in full below, consists of a single page from a brochure, or a flyer, for the identified closures for containers. SOU, TSDR 3 ("brochure specimen"). The top of the page displays the upper portion of two growlers with Applicant's caps stamped or embossed with Applicant's proposed mark DRINK MORE BEER around a design of a beer mug, next to the wording "20% of craft beer is sold in growlers*. *According to the American Brewer's Association (ABA)." The two growlers appear directly above the wording "How do you keep your brand in front of your customers?" Directly below this query, in the middle of the page, the brochure specimen displays the wording "NNBC'S Embossed Growler Caps with Taperseal Top & Side seal, your brew is kept fresher longer and your brand is promoted at the same time." Below this wording, the brochure specimen shows a large image of five black caps stacked on top of each other,

with the proposed mark DRINK MORE BEER appearing on the top cap, and one black cap resting on an angle by the middle cap, with the wording "YOUR LOGO HERE" and a seal and banner design. The wording "Cost-Effective Stock Designs 'Drink More Beer' – Stock print from $0.49 with no setup fees," "Custom Embossed Designs Custom caps with your logo starting at just $0.29/piece with a one-time set-up fee of $3,500.00" appears next to the stack of caps. Applicant's logo "NNBC ESTD. 1916" and design appear in a vertical rectangular block on the lower left portion of the specimen, next to the wording "Contact NNBC's sales team to learn how our growler lid closures can help your brewery grow!" The brochure specimen appears as follows:







As noted above, the Trademark Examining Attorney refused registration of the proposed mark under Sections 1, 2 and 45 of the Trademark Act on the ground that it fails to function as a trademark because it is presented on the specimens of use as an example of a "stock" print or image that customers could choose when ordering the identified goods, and would not be perceived as identifying and distinguishing Applicant's goods from those of others or indicating their source. November 25, 2019 Office Action, TSDR 1.

In response, Applicant submitted a substitute specimen, consisting of another image of its growler cap (in blue) with the proposed mark and design of a beer mug stamped or embossed on the cap top. May 19, 2020 Response to Office Action, TSDR 2. This specimen appears to be a cropped and enlarged image of the blue cap that appears (along with a pink cap and a black cap) in the product category box for "GROWLER CAPS" in the original webpage specimen:



When the refusal was made final, Applicant appealed and requested reconsideration. After the Examining Attorney denied the request for reconsideration, the appeal was resumed. We affirm the refusal to register.

## II. Applicable Law

"[A] proposed trademark is registrable only if it functions as an identifier of the source of the applicant's goods or services." *In re DePorter*, 129 USPQ2d 1298, 1299 (TTAB 2019) (citing Sections 1, 2 and 45 of the Trademark Act). "The Trademark Act is not an act to register mere words, but rather to register trademarks. Before there can be registration, there must be a trademark, and unless words have been so used they cannot qualify." *In re Bose Corp.,* 546 F.2d 893, 192 USPQ 213, 215 (CCPA 1976).

Whether matter applied for as a trademark functions as a trademark depends on how it would be perceived by the relevant public, here a brewery owner, manager, or other employee who is responsible for ordering the goods, as is evident from the specimens, and also members of the general public associated with home brewing (e.g., home brew supply shops, home brewers).[3] *In re Eagle Crest, Inc.*, 96 USPQ2d 1227, 1229 (TTAB 2010); *In re Aerospace Optics, Inc.*, 78 USPQ2d 1861, 1862 (TTAB 2006). We make this determination by reviewing the specimens and other evidence of record showing how the proposed mark is used. *In re Hulting*, 107 USPQ2d 1175, 1177 (TTAB 2013) (quoting *Eagle Crest*, 96 USPQ2d at 1229).

---

[3] The identification of goods does not include any limitations to the classes of purchasers, thus we consider the relevant customers to include members of the general public associated with home brewing.

Mere intent that a word, design, symbol, or slogan function as a trademark, or the fact that such designation appears on the specimen, is not enough in and of itself to make it a trademark. *See In re Water Gremlin Co.*, 635 F.2d 841, 208 USPQ 89, 90 (CCPA 1980); *In re Manco, Inc.*, 24 USPQ2d 1938, 1941 (TTAB 1992) (citing *In re Remington Prods. Inc.*, 3 USPQ2d 1714, 1715 (TTAB 1987)). To be a trademark, the proposed mark must be used in a manner calculated to project to purchasers or potential purchasers a single source or origin for the goods. *Bose,* 192 USPQ at 215; *In re Volvo Cars of N. Am. Inc.*, 46 USPQ2d 1455, 1459 (TTAB 1998).

Looking at the record in total, from the perspective of an average owner, manager, or other employee of a brewery, or individual or business who is associated with home brewing, who is searching for growler caps, in addition to seeing the wording as a stock phrase (as clearly indicated on the first specimen), we believe they would view the proposed mark as an example of how their own marks might look on Applicant's growler caps. They would not associate the wording DRINK MORE BEER stamped or embossed on the growler cap as a source identifier of the "non-metal and non-paper closures for containers" identified in the application.

As described above, the webpage specimen prominently displays Applicant's initialism, NNBC, on the top left of the webpage, above images of six product category boxes, including one for "GROWLER CAPS." October 28, 2019 Statement of Use, TSDR 2. The proposed mark DRINK MORE BEER appears as a feature of the products -- the three caps shown in this box, functioning as a filler when the buyer opts not to have their own mark embossed in that location, as explained by the

brochure specimen discussed below. Unlike the relatively large bold initials NNBC, the wording DRINK MORE BEER is not prominently displayed or highlighted. There is no other wording or design on any of the caps or closures displayed in the five other product category boxes but they are all sold under the initials NNBC.

A product "can bear more than one mark without diminishing the identifying feature of each." *In re Morganroth*, 208 USPQ 284, 287 (TTAB 1980). But the "salient question is whether the designation in question, as used, will be recognized in itself as an indication of origin for the particular product or service. That is, does this designation create a commercial impression separate and apart from the other material appearing on the label or advertisement." *Id*. Brewery owners, managers, or other ordering employees, or individuals and businesses associated with home brewing, who encounter Applicant's webpage specimen would see pictures of NNBC's different brushes/applicators, caps and closures. Due to the prominence of NNBC on the webpage, the innocuous display of the wording DRINK MORE BEER on the growler caps, and the placement of the "GROWLER CAPS" as one of six product categories on the webpage, where none of the other product categories show pictures of stamped or embossed caps, such customers would not recognize the designation DRINK MORE BEER "in itself as an indication of origin" for the growler caps. *Id*. We think *In re J. Hungerford Smith Co.*, 279 F.2d 694, 126 USPQ 372 (CCPA 1960), is an instructive decision. The evidence there (a specimen) showed that the applicant used its JHS or "J. Hungerford Smith" designations to identify and distinguish the source of its soft drink syrup, but had "not used [the proposed mark] 'Burgundy' as a

trademark … but only as a flavor designation" for one of its products. 126 USPQ at 373. Similarly, the evidence here (Applicant's webpage specimen) shows that Applicant uses "NNBC" (sometimes with an accompanying design) to identify and distinguish the source of its closures for containers, and DRINK MORE BEER merely identifies optional wording that may appear on one of the products, or one of the available styles for the product sold, under the NNBC mark.

Our conclusion is further supported by the brochure specimen which refers to the proposed mark as one of Applicant's "Cost-Effective Stock Designs" (in the plural).[4] October 28, 2019 Statement of Use, TSDR 3. Average brewery owners, managers, or other ordering employees, or individuals or businesses associated with home brewing, who see the brochure would understand that they could save money by purchasing growler caps with pre-stamped standard wording, such as DRINK MORE BEER; they could use Applicant's custom embossment service to stamp their own mark on the caps as a way to promote their own brewery or brand of beer; or perhaps they could purchase blank caps with no stamps or embossments, like the other caps and closures displayed on Applicant's webpage specimen. Whether Applicant's customer requests its own logo printed on the cap or buys the stock "DRINK MORE BEER" cap, however, the individuals purchasing growlers from Applicant's customer, who are supplied the cap by Applicant's customer, will associate the wording on the top of the cap with Applicant's customer, not Applicant, if they associate it with anyone at all. The

---

[4] This reference belies Applicant's contention that it has only one stock design, and customers are offered a choice between "applicant's 'stock' mark of 'Drink More Beer;' or the consumer's own customized logo." Applicant's Brief, 8 TTABVUE 3.

wording DRINK MORE BEER does not serve as a source identifier for the "non-metal and non-paper closures for containers" described in the application because it appears as just one example of a growler cap that customers can purchase if they do not wish to purchase a blank or customized growler cap.

Applicant's substitute specimen (May 19, 2020 Response to Office Action, TSDR 2) does not aid Applicant because, as noted above, it is simply a cropped and enlarged image of the blue cap displayed in the "GROWLER CAPS" product category box in the original webpage specimen, where the wording "DRINK MORE BEER" appears as part of the product design.

## III.    Conclusion

The proposed mark DRINK MORE BEER fails to function as a trademark because it is presented on the specimens as an example of a standard print or image of a growler cap that brewery owners, managers, or other ordering employees (or individuals or businesses associated with home brewing) could purchase to use in their own beer sales to the public if they do not want to order a blank or custom embossed growler cap from Applicant. DRINK MORE BEER is not used on the specimens of record in a manner to identify source, but rather to show relevant customers of "non-metal and non-paper closures for containers" the product they can buy, and that they can buy the product with standard wording such as DRINK MORE BEER, with no wording or logo, or with their own wording or logo, stamped or

embossed on the product. As such, DRINK MORE BEER would not be perceived as a trademark for "non-metal and non-paper closures for containers."[5]

**Decision**: The refusal to register Applicant's proposed mark DRINK MORE BEER is affirmed.

---

[5] Because the refusal is not that the proposed mark is a common or widely-used expression, Applicant's arguments on this point are inapposite and have not been considered. *See* Applicant's Brief, 8 TTABVUE 3. Nonetheless, we note that the proposed mark does not provide information about the identified closures for containers.